### UNITED STATES DISTRICT COURT
### DISTRICT OF COLUMBIA

Tracy Jenson,                    :
P.O. Box 35                      :
Spirit Lake, ID 83869            :
    Plaintiff            :
                                 :    Case No.  1:07cv00359-RWR
                                 :
v.                               :    Judge Richard W. Roberts
                                 :
Federal Aviation Administration  :
800 Independence Ave., S.W.      :
Washington, D.C. 20591           :
                                 :
and                              :
                                 :
National Air Traffic Controllers :
Association, AFL-CIO             :
1325 Massachusetts Ave., N.W.    :
Washington, D.C. 20005           :
    Defendants           :
_____  :

### MOTION TO DISMISS OR IN THE
### ALTERNATIVE FOR SUMMARY JUDGMENT

Defendant National Air Traffic Controllers Association, AFL-CIO ("NATCA"

or "the Union"), by its undersigned counsel, respectfully moves the Court,

pursuant to Rule 12(b), Fed. R. Civ. P., to dismiss the allegations by Plaintiff

Tracy Jenson against NATCA, or, in the alternative, to enter summary judgment

against the Plaintiff pursuant to Rule 56, Fed. R. Civ. Pr., on the grounds that

Plaintiff's claim is covered by the applicable collective bargaining agreement, and

subject to the exclusive jurisdiction of the Federal Labor Relations Authority and

beyond this Court's subject matter jurisdiction.

In support of this Motion, Defendant NATCA submits the accompanying Memorandum of Law and Statement of Facts to Which There is No Genuine Dispute.

Respectfully submitted,

/s/ William W. Osborne , Jr.
William W. Osborne, Jr.
D.C. Bar No. 912089
Osborne Law Offices, P.C.
4301 Connecticut Avenue, N.W.
Suite 108
Washington, D.C. 20008
Phone: (202) 243-3200
Fax: (202)243-3207

Dated: February 26, 2007          Counsel for Defendant, NATCA

## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

Tracy Jenson,                          :
P.O. Box 35                            :
Spirit Lake, ID 83869                  :
           Plaintiff     :
                         :     Case No.  1:07cv00359-RWR
                         :
v.                                     :     Judge Richard W. Roberts
                         :
Federal Aviation Administration        :
800 Independence Ave., S.W.            :
Washington, D.C. 20591                 :
                         :
and                                    :
                         :
National Air Traffic Controllers       :
Association, AFL-CIO                    :
1325 Massachusetts Ave., N.W.          :
Washington, D.C. 20005                 :
           Defendants    :

---

### MEMORANDUM OF LAW IN SUPPORT OF
### DEFENDANT NATCA'S MOTION TO DISMISS OR IN THE ALTERNATIVE MOTION
### FOR SUMMARY JUDGMENT

Defendant National Air Traffic Controllers Association, AFL-CIO ("NATCA" or "the Union"), by its undersigned counsel, submits this Memorandum of Law in support of its Fed. R. Civ. Pr. 12(b) Motion to Dismiss for lack of subject matter jurisdiction, or in the alternative, for entry of summary judgment against the Plaintiff pursuant to Fed. R. Civ. Pr. 56.

The Statement of Claim, originally filed by Plaintiff Tracy Jenson in D.C. Superior Court Small Claims Branch, makes the following allegations:

Defendant FAA/Union attempted to stop my promotion, only succeeding in delaying my promotion by 14 months, then upon promotion agreed to use the

wrong rule to change pay systems, putting my pay at $30,000 per year less than if I would have been promoted on time. Return of Union dues from salary from Union. Breach of contract, fraudulent acceptance of union dues, and financial assault.

Attachment 1, hereto.

Plaintiff's claim is apparently a restatement of claims he unsuccessfully presented in a Motion for Contempt filed in an earlier case between NATCA and the Federal Aviation Administration ("FAA" or "the Agency") in the U. S. District Court for the Northern District of Ohio in 2005. See Defendant's Statement of Undisputed Facts ("Def. St. of Undisp. Facts") at ¶7 and Exhibit 4 thereto.

Thus, Plaintiff's Complaint appears to be that the Union, by filing a lawsuit challenging the FAA's privatization of air traffic control facilities, delayed the contracting out of several air traffic facilities, including the facility at which Plaintiff Jenson was employed, which, he claims, caused him to be reassigned to another FAA facility at a lower pay rate because of certain pay rules that had been implemented by agreement between NATCA and the FAA in the interim. In any event, Plaintiff's claim clearly stems from a dispute over his rates of pay as an employee of the FAA -- "Defendant FAA/Union attempted to stop my promotion, only succeeding in delaying my promotion by 14 months, then upon promotion agreed to use the wrong rule to change pay systems, putting my pay at $30,000 per year less than if I would have been promoted on time..." -- a matter governed by the collective bargaining agreement then in effect between NATCA and the FAA.

As we show below, the Court lacks subject matter jurisdiction over Plaintiff's action against the Union for any matter, even arguably governed by a collective bargaining agreement covering federal employees. 5 U.S.C. §7101 et seq.; Arakawa v.

2

Reagan, 666 F. Supp. 254, 258, n.7 (D.D.C. 1987); Nat'l Treasury Employees Union v. Devine, 577 F. Supp. 738, 745 (D.D.C. 1983).

## STATEMENT OF FACTS

Plaintiff Tracy Jenson was employed as an air traffic controller by the FAA until April 2003 when he resigned his position. Def. St. of Undisp. Facts at ¶1.

Defendant FAA is an administrative agency within the Department of Transportation ("DOT"). Id. at ¶3.

Defendant NATCA is a labor organization within the meaning of 5 U.S.C. § 7103(a)(4), which represents approximately 16,000 employees of the FAA. While employed by the FAA as an air traffic controller, Plaintiff was a member of the bargaining unit, and NATCA served as his exclusive collective bargaining representative under 5 U.S.C. §7114(a)(1). Id. at ¶2.

At all relevant times herein, NATCA and the FAA were parties to a collective bargaining agreement, effective February 25, 2001, which included a mandatory grievance procedure for the handling of complaints by "any employee concerning any matter relating to the employment of the employee." Id. at ¶4.

In 1994, NATCA filed an action in the U.S. District Court for the Northern District of Ohio challenging the FAA's decision to privatize certain air traffic control towers. Id. at ¶5. In 1998, the Court "granted partial summary judgment in favor of NATCA and the individual plaintiffs, vacating the privatization program as it then existed, and remanding to the FAA for further administrative proceedings." Id. at ¶6.

According to a Motion for Contempt in 2005 filed by Plaintiff in the U.S. District Court for the Northern District of Ohio, the district court's decision in 1998 caused him to

3

be transferred to another FAA facility under a new pay system that the FAA and NATCA had agreed to in the ensuing years while the district court case was pending and which he alleged caused him to receive a smaller pay increase than other employees. Id. at ¶7.

Plaintiff never availed himself of the negotiated grievance procedure but instead attempted to intervene in the 1994 privatization case by filing a Motion for Contempt of Court on September 7, 2005. On September 30, 2005, the U.S. District Court for the Northern District of Ohio issued a final order denying Plaintiff's Motion for Contempt for lack of subject matter jurisdiction on the basis that "the [parties'] CBA and the grievance procedure and subsequent arbitration are the exclusive method of resolving certain disputes." Id. at ¶¶8, 9. The U.S. District Court's decision was not appealed.

Some eighteen months later, Plaintiff filed the instant action against the FAA and NATCA in the District of Columbia Superior Court, Small Claims Branch, on January 29, 2007, asserting a breach of contract claim for $5,000, the maximum amount recoverable in Small Claims Court. See Attachment 1. That case was timely removed to this Court on February 16, 2007.

## ARGUMENT

### THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER PLAINTIFF'S CLAIMS AGAINST NATCA.

Plaintiff's claim against NATCA in substance, if not also in form, alleges a breach of a collective bargaining agreement, an allegation that lies within the *exclusive* jurisdiction of the FLRA. 5 U.S.C. §7101 *et seq*; Nat'l Treasury Employees Union v. Devine, 577 F. Supp. 738, 745 (D.D.C. 1983). The lack of subject matter jurisdiction

4

that mandated dismissal of Plaintiff's claims against the FAA in the Northern District of Ohio case is equally applicable here.

To the extent that the claim filed by Plaintiff can be deemed to include an alleged breach of the duty of fair representation by NATCA -- for filing suit in federal court which delayed his transfer to a new facility and in negotiating new reclassification pay rules -- such a claim would likewise be within the exclusive jurisdiction of the FLRA. See, Karahalios v. National Fed'n of Fed. Employees, Local 1263, 489 U.S. 527, 531-32 (1989); ALPA v. O'Neill, 499 U.S. 65, 77 (1991) (fair representation standard "applies to a union in its negotiating capacity"); Department of the Army and Nat'l Fed'n Of Fed. Employees, Local 2109, 39 FLRA 318, 1991 FLRA LEXIS 132, at **2-3 (1991) (union breached duty of fair representation by entering into agreement for asbestos testing program).

Any claim by Plaintiff with respect to a dispute over pay rates, and/or the Union's representation of him in that capacity, is thus preempted by Federal law and is beyond this Court's subject matter jurisdiction.

## PLAINTIFF'S CLAIM IS BARRED BY ISSUE PRECLUSION

Plaintiff's claim is also barred by the doctrine of issue preclusion or collateral estoppel. This is so because Plaintiff's claim herein: 1) raises the same issues that were contested in the Northern District of Ohio; 2) raises the same issues that were "actually and necessarily determined by a court of competent jurisdiction;" and 3) thereby requires Plaintiff to be "bound by the first determination" which result will, in no respect, deny him basic fairness. Yamaha v. United States, 961 F.2d 245, 254 (D.C. Cir. 1992).

There can be no dispute that Plaintiff's claims in the Northern District of Ohio and here are substantively indistinguishable -- that the delay in implementation of the contracting out of air traffic control facilities caused him a reduction in pay. <u>Compare</u> Def. St. of Undisp. Facts ¶¶7, 9; Attachment 1, hereto.

Accordingly, for all of the foregoing reasons, NATCA respectfully urges the Court to dismiss Plaintiffs' claims for lack of subject matter jurisdiction, or in the alternative grant summary judgment against the Plaintiff.

Respectfully submitted,

/s/ William W. Osborne, Jr.
William W. Osborne, Jr.
D.C. Bar No. 912089
Osborne Law Offices, P.C.
4301 Connecticut Avenue, N.W.
Suite 108
Washington, D.C. 20008
Phone: (202) 243-3200
Fax: (202)243-3207

Dated: February 26, 2007                    Counsel for Defendant, NATCA

## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

Tracy Jenson,                        :
P.O. Box 35                          :
Spirit Lake, ID 83869                :
      Plaintiff             :
                                  :     Case No.  1:07cv00359-RWR
                                    :
v.                                   :     Judge Richard W. Roberts
                                    :
Federal Aviation Administration      :
800 Independence Ave., S.W.          :
Washington, D.C. 20591               :
                                    :
and                                  :
                                    :
National Air Traffic Controllers     :
Association, AFL-CIO                  :
1325 Massachusetts Ave., N.W.        :
Washington, D.C. 20005               :
      Defendants             :

## STATEMENT OF MATERIAL FACTS TO WHICH THERE IS NO GENUINE DISPUTE

Pursuant to Local Rule 56.1, D.C. L.Cv.R., Defendant National Air Traffic Controllers Association, AFL-CIO ("NATCA") submits this Statement of Material Facts as to Which There Is No Genuine Dispute in support of its Motion to Dismiss or, in the alternative, Motion for Summary Judgment.

1. Plaintiff Tracy Jenson was employed as an air traffic controller by the FAA until April 2003 when he resigned his position. See September 30, 2005, Memorandum and Order at 2 (N.D. Oh.), Case No. 1:94-CV-00574 (Exhibit 1, hereto). While employed as an air traffic controller, Plaintiff was a member of the

NATCA-represented bargaining unit, and NATCA served as his exclusive collective bargaining representative under 5 U.S.C. §7114(a)(1). Id.

2. Defendant NATCA is a labor organization within the meaning of 5 U.S.C. § 7103(a)(4), which represents approximately 16,000 employees of the Federal Aviation Administration ("FAA" or "the Agency"). Id.

3. Defendant FAA is an administrative agency within the Department of Transportation ("DOT"). Id.

4. NATCA and the FAA were parties to a collective bargaining agreement, effective February 25, 2001, which included a grievance procedure for the handling of complaints by "any employee concerning any matter relating to the employment of the employee."   Collective Bargaining Agreement ("CBA"), Art. 9 (Exhibit 2, hereto).

5. In 1994, NATCA filed an action in the U.S. District Court for the Northern District of Ohio challenging the FAA's decision to privatize certain air traffic control towers. See  Complaint (Exhibit 3, hereto).

6. In 1998, the Court "granted partial summary judgment in favor of NATCA and the individual plaintiffs, vacating the privatization program as it then existed, and remanding to the FAA for further administrative proceedings." Mem. and Order at 1 (Exhibit 1).

7. According to Plaintiff's Motion for Contempt filed in the U.S. District Court for the Northern District of Ohio in 2005 (Exhibit 4), the 1998 decision by the U.S. District Court for the Northern District of Ohio caused him to be transferred to another facility under a new pay system that the FAA and NATCA

had agreed to in the ensuing years while that court case was pending, and which he alleged caused him to receive a smaller pay increase than other employees.

8. Plaintiff has never availed himself of the negotiated grievance procedure but instead attempted to intervene in the 1994 privatization case by filing a Motion for Contempt of Court on September 7, 2005. Mem. and Order at 3 (Exhibit 1).

9. On September 30, 2005, the U.S. District Court for the Northern District of Ohio issued a final order, which was not appealed, denying Plaintiff's Motion for Contempt for lack of subject matter jurisdiction finding that "the [parties'] CBA and the grievance procedure and subsequent arbitration are the exclusive method of resolving certain disputes." Mem. and Order at 3 (Exhibit 1).

Respectfully submitted,

/s/ William W. Osborne, Jr.
William W. Osborne, Jr.
D.C. Bar No. 912089
Osborne Law Offices, P.C.
4301 Connecticut Avenue, N.W.
Suite 108
Washington, D.C. 20008
Phone: (202) 243-3200
Fax: (202)243-3207

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Motion to Dismiss, or in the

alternative, Motion for Summary Judgment, Memorandum of Law in support

thereof, Statement of Undisputed Facts, Declaration of William W. Osborne, Jr.

and proposed Order were sent via the Court's ECF System this 26th day of

February 2007 to the following:

Jeffrey A. Taylor
United States Attorney
555 4th St., NW, Rm E4212
Washington, D.C.  20530

Rudolph Contreras
Assistant United States Attorney
555 4th St., NW, Rm E4212
Washington, D.C.  20530

Michelle N. Johnson
Assistant United States Attorney
555 4th St., NW, Rm E4212
Washington, D.C.  20530

and were sent via First Class Mail to the following:

Tracy Jenson
P.O. Box 35
Spirit Lake, Idaho 83869

/s/ William W. Osborne, Jr.
William W. Osborne, Jr.

Small Claims Form 11
General

# Superior Court of the District of Columbia

RECEIVED

FEB . 1 2007

NATCA Exec Ofc

## CIVIL DIVISION

### SMALL CLAIMS AND CONCILIATION BRANCH
Bldg. B, 510 4th Street, N.W., RM –120
WASHINGTON, D.C. 20001    TELEPHONE 879-1120

TRACY JENSON
_____
                    Plaintiff(s)

P.O. BOX 35
_____

SPIRIT LAKE, ID. 83869
_____
Address                Zip Code

Phone No. (509) 481-7320

VS.

(1) NATIONAL AIR TRAFFIC CONTROLLERS
ASSOCIATION
_____
                    Defendant(s)

(2) FEDERAL AVIATION ADMINISTRATION

(3) _____

No. SC 2007 SC (3) 1129

## STATEMENT OF CLAIM

FAA/
DEFENDANT UNION ATTEMPTED TO STOP MY PROMOTION, ONLY SUCCEEDING IN
DELAYING MY PROMOTION BY 14 MONTHS, THEN UPON PROMOTION AGREED TO USE THE
WRONG RULE TO CHANGE PAY SYSTEMS, PUTTING MY PAY AT $30,000 PER YEAR LESS
THAN IF I WOULD HAVE BEEN PROMOTED ON TIME. RETURN OF UNION DUES AND REASON
FOR SALARY FROM UNION. BREACH OF CONTRACT, FRAUDULENT ACCEPTANCE OF UNION DUES, FINANCIAL ASSAULT.

DISTRICT OF COLUMBIA, ss: _Tracy A. Jenson_ TRACY A. JENSON being first duly sworn on oath says
the foregoing is a just and true statement of the amount owing by the defendant to plaintiff, exclusive of all set-offs and just grounds
of defense.

_Tracy A. Jenson_ TRACY A. JENSON
_____
Plaintiff/Agent (Sign and Print Name)

Title: _____

Subscribed and sworn to before me this 23RD day of

P.O. BOX 35
_____
Address

SPIRIT LAKE, ID. 83869
_____
City/State/Zip Code

Phone No.: (509) 481-7320

JAN _____ 20 07
(month and year)

_____
Deputy Clerk (or Notary public)

EDDIE LARUE
Notary Public State of Nevada
No 93-1085 1
My appt. exp. Mar 15, 2009

FILED

JAN 2 9 2007

Clerk
Superior Court
District of Columbia
Small Claims Branch Thomas Romig

_____
Attorney for Plaintiff (Sign and Print Name)

_____
Address                    Zip Code

Bar No.: _____ Phone No.: _____

## NOTICE (All parties must notify the court of any address changes)

To:
(1) NATCA - PAT FORREY
1325 MASSACHUSETTS AVE, NW
WASHINGTON D.C. 20005
Address                Zip Code
☐ Home  UNION  ☐ Business

(2) FEDERAL AVIATION ADMINISTRATION AGC-I
800 INDEPENDENCE AVE. SW  Defendant
WASHINGTON D.C. 20591
Address                Zip Code
☐ Home  FEDERAL  ☐ Business
         AGENCY

You are hereby notified that TRACY JENSON
_____ has made a claim and is requesting judgment
against you in the sum of FIVE THOUSAND _____ dollars ($5,000 ºº ).

as shown by the foregoing statement. The court will hold a hearing upon this claim on 2/22/07

at 9:00 a.m. in the Small Claims and Conciliation Courtroom 119, Bldg. B, 510 4th Street, N.W.,

SEE REVERSE SIDE FOR COMPLETE INSTRUCTIONS. BRING THIS NOTICE WITH YOU AT ALL TIMES

CV-471/IIB. 06                    **Attachment 1**

Deputy Clerk
Small Claims and Conciliation Branch

IMPORTANT: IF YOU FAIL TO APPEAR AT THE TIMES STATED OR AT ANY OTHER TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY, DAMAGES OR OTHER RELIEF DEMANDED IN THE STATEMENT OF CLAIM. IF THIS OCCURS, YOUR WAGES OR BANK ACCOUNT MAY BE ATTACHED OR WITHHELD OR ANY PERSONAL PROPERTY OWNED BY YOU MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. DO NOT FAIL TO APPEAR AT THE REQUIRED TIME.

Before any case goes to trial in the Small Claims and Conciliation Branch, a trained mediator will meet with all parties to see if a settlement can be worked out. If all parties are present when your case is called, you and the plaintiff will be able to see a mediator and hopefully settle your dispute without having to go to trial.

You may come with or without a lawyer. The Statement of Claim indicates whether the plaintiff has a lawyer. If the plaintiff does have a lawyer and you wish to dispute the claim, it would be in your interest to have your own lawyer.

If you wish to have legal advice and feel that you cannot afford to pay a fee to a lawyer, you may contact one of the offices of the Legal Aid Society (NA 8-1161), Neighborhood Legal Services (682-2700) OR THE D.C. Law Students in Court program (638-4798) for help or come to 409 E Street NW., Room 120 for more information concerning places where you may ask for such help. **Act Promptly.**

If it is impossible for you to appear on the date of trial, attempt to contact the Plaintiff to arrange a new date. If parties agree on a date, notify the clerk of the Small Claims Branch of this court in person or by phone of the new date. If parties cannot agree, you may contact the clerk who will advise you. If you do not appear on the new date, a judgment may be entered against you.

Whenever corresponding with the Small Claims clerk's office by mail, please include your case number and your date to appear in court.

You are given the following additional instructions in the event that you intend to appear without a lawyer.

If you have witnesses, books, receipts, or other writings bearing on this claim, you should bring them with you at the time of the hearing.

If you wish to have witnesses summoned, see the clerk at once for assistance.

If you admit the claim but desire additional time to pay, you must come to the hearing in person and state the circumstances to the Court.

PUEDE OBTENERSE COPIAS DE ESTE FORMULARIO EN ESPANOL EN EL TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA 409 E STREET, N.W., SALA 120.

YOU MAY OBTAIN A COPY OF THIS FORM IN SPANISH AT THE SUPERIOR COURT OF D.C. 409 E STREET, N.W., ROOM 120.

07-SC3-1129  2/22/07

SUPERIOR COURT
OF THE DISTRICT OF COLUMBIA
WASHINGTON, D.C. 20001

OFFICIAL BUSINESS
PENALTY FOR MISUSE

CERTIFIED MAIL

7001 0360 0004 3227 9385

NATCA, Pat Forrey
1325 Massachusetts Avenue, NW
Washington, DC 20005

02 1A
0004380435    $ 04.64°
JAN 31 2007
MAILED FROM ZIP CODE 20001

2000584171 C040

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

NATIONAL AIR TRAFFIC CONTROLLERS       )
ASSOCIATION et al.,                    )          Case No. 1:94-CV-00574
                                       )
        Plaintiffs,                    )
                                       )          Judge Ann Aldrich
        v.                             )
                                       )
NORMAN Y. MINETA, Secretary, U.S.      )
Department of Transportation et al.,   )          MEMORANDUM AND ORDER
                                       )
        Defendants.                    )

        Before this Court is *pro se* petitioner Tracy Jenson's ("Jenson") Motion for Order of

Contempt and Request for Hearing [Docket No. 92] against the Federal Aviation Administration ("FAA").

Jenson alleges that the FAA has failed to comply with this Court's March 2, 1998 Order [Docket No. 69]

(the "1998 Order") vacating the FAA's privatization decision regarding certain air traffic control towers and

remanding the matter to the FAA for further proceedings.  For the following reasons, this Court denies

Jenson's motion.

## I.    Background

        In 1994, the National Air Traffic Controllers Association ("NATCA"), which represents air

traffic controllers working for the FAA, along with two individual air traffic controllers, filed this action

challenging the FAA's decision to privatize certain air traffic control towers.  In the 1998 Order, this Court

granted partial summary judgment in favor of NATCA and the individual plaintiffs, vacating the privatization

program as it then existed, and remanding to the FAA for further administrative proceedings.  Nowhere in

the 1998 Order, or in the accompanying Memorandum and Order [Docket No. 68] does the Court discuss

Exhibit 1

the prospective pay arrangements for air traffic controllers working in towers scheduled for privatization by the FAA.

Jenson was employed as an air traffic controller by the FAA until April 2003, when he resigned his position. He was represented by NATCA during his employment. NATCA-FAA Collective Bargaining Agreement ("CBA") Art. 2 § 1.[1] NATCA is the exclusive representative of all air traffic controllers employed by the FAA. *Id.* As such, it "is entitled to act for, and negotiate collective bargaining agreements covering, all employees" in the specified collective bargaining unit -- in this case, air traffic controllers. 5 U.S.C. § 7114(a)(1).

Pursuant to that authority, NATCA negotiated a collective bargaining agreement with the FAA that provides for a grievance process for handling complaints by "any employee concerning any matter relating to the employment of the employee." CBA Art. 9 § 1(a). Under Article 9 of the CBA, "[e]xcept as limited or modified by Sections 3, 4, and/or 5, [the Article 9 grievance procedure] shall be the *exclusive* procedure available to [NATCA, FAA] and the employees in the unit for resolving grievances." CBA Art. 9 § 2 (emphasis added). This dispute, involving rates of pay, does not fall within the listed exceptions.[2] The grievance process concludes with arbitration before a panel of three arbitrators, and " [t]he decision of the arbitrator is final and binding." CBA Art. 9 § 10.

---

[1]    A copy of the NATCA-FAA collective bargaining agreement is available at http://www.faa.gov/ahr/policy/agree/agrees/term/natca-at/Natca98.cfm (last visited Sept. 22, 2005).

[2]    The listed exceptions are: (1) any claimed violation of subchapter III of Chapter 73, Title 5 U.S.C. (relating to prohibited political activities); (2) retirement, life insurance or health insurance; (3) a suspension or removal under 5 U.S.C. § 7532 (relating to national security matters); (4) any examination, certification or appointment (5 U.S.C. § 7121(c)(4)); (5) the classification of any position which does **not** result in the reduction-in-grade or pay of any employee; (6) the removal of probationers; (7) matters relating to 5 U.S.C. 2302(b)(1) dealing with certain discriminatory practices where an employee may elect grievance or another procedure but not both; and (8) statutory appeal procedures. CBA Art. 9 §§ 3-5 (emphasis added).

-2-

In his motion for contempt, Jenson alleges that the 1998 Order resulted in certain air traffic controllers, including himself, being put into a new pay system, resulting in smaller pay increases than other employees. He alleges that the FAA failed to inform these controllers that they would be placed at the bottom of the pay scale, and claims that this result is not what this Court intended in its 1998 Order. Jenson did not file a grievance with the NATCA or with the FAA concerning this dispute. (Declaration of Anthony Tisdall ¶ 8 [Docket No. 96]) He filed the instant motion for contempt on September 7, 2004. Following a Joint Proposed Stipulation to Stay Briefing [Docket Nos. 93 and 94] entered on October 15, 2004, no action was taken until February 24, 2005. On that date, the FAA filed its opposition, following notice it received from Jenson on February 3, 2005, that he wished to proceed with the motion for contempt. (FAA Opp'n at 3)

## II.     Discussion

The FAA raises two arguments in opposition to Jenson's motion for contempt. First, the FAA contends that because Jenson's dispute is over rates of pay, a subject within the scope of the CBA, this Court is without jurisdiction to hear Jenson's motion. Second, the FAA contends that Jenson has provided no evidence that the FAA has in any way violated this Court's 1998 Order, and that Jenson's complaints arise out of the FAA's compliance with the 1998 Order, so that the FAA is not in contempt. Because this Court finds that it lacks jurisdiction, Jenson's motion will be denied. In the alternative, because Jenson has not shown, by clear and convincing evidence, that the FAA has violated the 1998 Order, Jenson's motion will be denied.

### 1.     Subject Matter Jurisdiction

The CBA provides that the grievance procedure and subsequent arbitration are the exclusive method of resolving certain disputes. CBA Art. 9 § 2. Jenson's dispute does not fall within any

-3-

of the listed exceptions. *See* CBA Art. 9 §§ 3-5. Therefore, this Court is without jurisdiction to hear the dispute. *Armco Employees Indep. Fed'n, Inc. v. Armco Steel Co.*, 65 F.3d 492, 496 (6th Cir. 1995) (holding that "where a labor agreement mandates arbitration, 'courts must order resort to private settlement mechanisms without dealing with the merits of the dispute.'") (citation omitted). While this Court must "liberally construe" *pro se* pleadings, *Estelle v. Gamble*, 429 U.S. 97, 106 (1976), no amount of liberal construction creates federal court jurisdiction where none exists.

2.    *The FAA's Compliance with the 1998 Order*

To establish civil contempt, "the petitioner must prove by clear and convincing evidence that the respondent violated the court's prior order." *Glover v. Johnson*, 138 F.3d 229, 244 (6th Cir. 1998). Specifically, Jenson must show that the FAA "'violate[d] a definite and specific order of the court requiring [the FAA] to perform or refrain from performing a particular act or acts with knowledge of the court's order.'" *Id.* (citation omitted). The burden lies with Jenson to "make a prima facie showing of a violation." *Id.* Without such a showing, Jenson's contempt motion must be denied.

In his motion, Jenson alleges that the FAA somehow violated the 1998 Order by:

> "fail[ing] to inform the court that if the people in the fourth
> year of the program (to contract out towers) were delayed in
> moving, that it may cause them to be put into a new pay system
> differently[sic] resulting in smaller pay increases than other
> identical employees received, and smaller pay increases than
> they would have received without the delay in the program.

Jenson's Mot. at 2. According to Jenson, this "causes [these] employees to be 'victims' of the court without that being the intention of the court." *Id.* at 3. However, the 1998 Order does not address the pay regulations for any employees of the FAA, much less the specific treatment of controllers at the towers scheduled for privatization. The 1998 Order does two things: it (1) vacates the FAA's privatization

-4-

decision at that time, and (2) remands the matter to the FAA for further proceedings.

Therefore, Jenson has not met his burden to demonstrate, by clear and convincing evidence, that the FAA has "violated a definite and specific order of the court" by performing or failing to perform an act required by an order of this Court. His contempt motion will therefore be denied on the merits as well.

### III. Conclusion

For the foregoing reasons, the Court denies Jenson's motion for contempt [Docket No. 92] for lack of subject matter jurisdiction, or alternatively, for failure to show contempt by the FAA of any order of this Court.

IT IS SO ORDERED.

_s/Ann Aldrich_____
ANN ALDRICH
UNITED STATES DISTRICT JUDGE

**Dated: September 30, 2005**



AGREEMENT

between the

NATIONAL AIR TRAFFIC
CONTROLLERS ASSOCIATION
AFL/CIO

and the

FEDERAL AVIATION ADMINISTRATION
DEPARTMENT OF TRANSPORTATION



SEPTEMBER 1998
FEBRUARY 2001
SEPTEMBER 2001

Exhibit 2

ATA-10
December 2001

**Section 3.** The Parties shall continue their support of training on problem solving techniques and similar programs which the Parties mutually agree to pursue. The Union and the Employer shall mutually agree on the scope, content, development and arrangements for delivery of any joint problem solving training under this Article.

**Section 4.** Official time, travel and per diem shall be granted to Union representatives to attend jointly agreed upon training/briefings on joint problem solving techniques.

**Section 5.** At the request of either Party, the Parties shall meet in an effort to develop a process of alternative dispute resolution. The Union's representatives shall be on official time, if otherwise in a duty status.

## ARTICLE 9
## GRIEVANCE PROCEDURE

**Section 1.** A grievance shall be defined as any complaint:

a. by any employee concerning any matter relating to the employment of the employee;

b. by the Union concerning any matter relating to the employment of any unit employee; or

c. by a unit employee or either Party concerning any claimed violation, misinterpretation, or misapplication of any law, rule or regulation affecting conditions of employment as provided in the Civil Service Reform Act of 1978 or this Agreement.

The Employer recognizes that employees are entitled to file and seek resolution of grievances under the provisions of the negotiated grievance procedure. The Employer agrees not to interfere with,

19

---

a. When a complaint/problem/concern arises, the employee, Union or Employer may notify the other affected Parties within ten (10) days of the event giving rise to the complaint/problem/concern. A meeting will be held within ten (10) days of notification, which will include the bargaining unit employee(s), the appropriate local Union representative and appropriate management representative.

b. The purpose of the meeting is to allow the employee, the Union and the Employer to freely present, receive and/or exchange information and their views on the situation.

c. The Parties shall try to find an opportunity for problem resolution and, if one arises, it will be, with mutual agreement, acted upon.

d. If the matter relates to pending discipline, disciplinary action will not be issued during the meeting.

e. If the Parties are unable to resolve the issue under this Article, the Employer shall render a decision within ten (10) days of the meeting. Once the decision has been rendered, and if appropriate, the employee may proceed with Article 9, Section 8, Step 1. Upon request, the provisions of Article 9, Section 8, Step 1, will be waived and the Parties will proceed under the provisions of Article 9, Section 8, Step 2, to resolve their complaint/problem/concern. The Employer or Union may proceed with Article 9, Section 11, Step 1. The time limits in Article 9 begin when the decision is rendered.

f. This basic format may be modified with the written agreement of the Parties at the local level.

g. This Article shall not diminish the Employer's right to discipline, where otherwise appropriate, nor shall the rights of the Union or the employee be affected by this Article.

18

restrain, coerce, or engage in any reprisal against any employee or Union representative for exercising rights under this Article.

**Section 2.** This procedure provides for the timely consideration of grievances. Except as limited or modified by Sections 3, 4, and/or 5, it shall be the exclusive procedure available to the Parties and the employees in the unit for resolving grievances. Any employee, group of employees or the Parties may file a grievance under this procedure. The Parties shall cooperate to resolve grievances informally at the earliest possible time and at the lowest possible supervisory level. The Parties, consistent with the provisions of this Article, intend that the joint problem solving procedures of Article 8 shall be used to the fullest extent practicable to resolve problems through a proactive approach before resorting to formal dispute resolution procedures.

**Section 3.** This procedure shall not apply to any grievance concerning:

a. any claimed violation of subchapter III of Chapter 73, Title 5 USC (relating to prohibited political activities);

b. retirement, life insurance or health insurance;

c. a suspension or removal under Section 7532, Title 5 USC (relating to national security matters);

d. any examination, certification or appointment (Title 5 USC 7121 (c)(4));

e. the classification of any position which does not result in the reduction-in-grade or pay of any employee;

f. the removal of probationers;

**Section 4.** In matters relating to Title 5 USC 2302(b)(1) dealing with certain discriminatory practices, an aggrieved employee shall

20

have the option of utilizing this grievance procedure or any other procedure available in law or regulation, but not both.

**Section 5.** The Parties reserve their rights to all applicable statutory appeal procedures.

**Section 6.** Employees are entitled to be assisted by the Union in the presentation of grievances. Any employee or group of employees covered by this procedure may present grievances without the assistance of the exclusive representative, as long as the exclusive representative has been given the opportunity to be present during the grievance proceedings. No other individual(s) may serve as the employee's representative in the processing of a grievance under this procedure, unless designated by the Union. The right of individual presentation does not include the right of taking the matter to arbitration unless the Union agrees to do so.

**Section 7.** In the case of grievances concerning disciplinary/adverse actions, the Union may elect to utilize the procedures of Section 8 or Section 16a. Grievances filed under Section 8 should be submitted beginning with Step 2, rather than Step 1, no later than twenty (20) calendar days after the effective date of the disciplinary/adverse action.

**Section 8.** Grievances filed by employees.

Employees are strongly encouraged to resolve their concerns through the joint problem solving procedures of Article 8 prior to submitting grievances under this Section.

**Step 1.** An aggrieved employee shall request in writing informal resolution of his/her grievance from his/her immediate supervisor (who may be the Air Traffic Manager) within twenty (20) calendar days of the event giving rise to the grievance or within twenty (20) calendar days of the time the employee may have been reasonably expected to have learned of the event. The supervisor shall promptly arrange for a meeting at a mutually

21

agreeable time, but no later than twenty (20) calendar days following the date of the employee's request to discuss the grievance. The employee and his/her representative will be given a reasonable amount of official time to present the grievance. The supervisor shall answer the grievance in writing within twenty (20) calendar days following the meeting. If the grievance is denied, the reasons for denial will be in this written response. A copy of the decision will be provided to the Union.

**Step 2.** If the employee or the Union is not satisfied with the answer, a formal grievance may be submitted to the Air Traffic Manager or Hub Manager, as appropriate, within twenty (20) calendar days following the receipt of the answer. In those facilities where the Air Traffic Manager is also the supervisor, the Hub Manager shall be the official to hear the grievance at this step. In such cases, the grievance may be processed through the Air Traffic Manager. The grievance shall be submitted in writing on a grievance form and shall contain the name of the grievant, the alleged violation, the corrective action desired, the name of his/her Union representative, and whether he/she wishes to make an oral presentation. Failure to provide all of the information listed above shall result in the grievance being returned for completion. The time limit will continue to run during the period completion. If requested, the Air Traffic Manager or Hub Manager, as appropriate, shall, prior to making a decision, afford the employee and/or Union representative an opportunity to present the grievance orally. The employee and his/her representative will be given a reasonable amount of official time to present the grievance. The decision of the Air Traffic Manager or Hub Manager, as appropriate, shall be delivered to the employee and Union representative within twenty (20) calendar days following receipt of the written grievance. In disciplinary/adverse action cases, a decision shall be delivered to the employee within ten (10) calendar days of the date of the grievance. The decision shall be delivered personally

to the employee, and/or his/her representative, if he/she is on duty. Otherwise, another appropriate method of delivery shall be used. If the grievance is denied, the reasons for denial will be in the written response.

**Step 3.** If the Union is not satisfied with the decision, the Union may within twenty (20) calendar days following receipt of the decision or the day the answer was due, advise the Manager, Labor Relations Branch, Regional Headquarters, or Air Traffic Labor Management Relations Division (ATX-500) for grievances arising out of the ATCSCC, by certified mail, that it desires the matter be reviewed by the Manager, Air Traffic Division or his/her designee. The Union will be notified by certified mail within twenty (20) calendar days of the regional decision. If the grievance is denied, the reasons for denial will be in the written response. The Union at the national level may, within thirty (30) calendar days following receipt of the regional decision, notify by certified mail the Director, Office of Labor and Employee Relations, with a copy to the Regional Labor Relations Branch Manager, that it desires the matter be submitted to arbitration. Within thirty (30) calendar days after receipt of the request, an arbitrator shall be selected from the panel by the Parties or by alternately striking names until one (1) remains or as otherwise mutually agreed. At least once quarterly, and more often if mutually agreed to, the Union's Regional Vice President, his/her designee, the Manager, Air Traffic Division, and the Manager, Labor Relations Branch, or their designees, shall meet to discuss and attempt to resolve grievances pending at Section 8, Step 3 or Section 11, Step 2 of this procedure. The Union representative(s) shall be on official time if otherwise in a duty status, including travel time. Travel and per diem expenses for the Regional Vice President or his/her designee will be authorized for one (1) meeting per quarter, under this Article.

**Section 9.** The Parties shall create a panel of three (3) mutually acceptable arbitrators in each FAA Region. Either Party may

unilaterally remove an arbitrator from the panel and another arbitrator shall be mutually selected to fill the vacancy. Arbitrators selected for panels must also agree to hear expedited arbitration cases as provided in Section 16.

**Section 10.** The grievance shall be heard by the arbitrator as promptly as practicable on a date and at a site mutually agreeable to the Parties. The Union advocate, if an employee of the FAA, shall be granted eight (8) hours of official time for preparation for the hearing. Additional release time may be granted, unless prohibited by operational requirements. Such time may be annual leave, earned compensatory time, leave without pay, or combination thereof. The grievant and/or the Union advocate, shall be given a reasonable amount of official time to present the grievance. FAA employees who are called as witnesses shall be in a duty status, if otherwise in a duty status. The Employer agrees to adjust the schedules of witnesses, to allow them to appear in a duty status. The Parties will exchange lists of potential witnesses to an arbitration hearing five (5) days prior to the scheduled hearing. Each Party shall bear the expense of its own witnesses who are not employed by the FAA, or who are not located at that duty location where the grievance arose. The Employer agrees to make every reasonable effort to produce witnesses requested by the Union. The arbitrator shall submit his/her report to the Air Traffic Manager, the aggrieved employee and/or the Union representative, as soon as possible, but in no event later than thirty (30) calendar days following the close of the record before him/her unless the Parties waive this requirement. The decision of the arbitrator is final and binding. If the Union advocate elects to submit a post hearing brief, the Union's case advocate, if an employee of the FAA, will be granted up to sixteen (16) hours of release time to prepare the post hearing briefs unless prohibited by operational requirements. Such time will be annual leave, earned compensatory time, leave without pay, or any combination thereof.

24

Additional release time may be granted, unless prohibited by operational requirements.

**Section 11.** Grievances filed by the Union or Employer. The Parties agree to use the joint problem solving procedures in Article 8 to the fullest extent practicable to resolve disputes prior to submitting grievances under this Section.

**Step 1.** In the case of any grievance which the Union at the facility, regional or national level may have against the Employer at the corresponding level, or which the Employer at the facility, regional or national level may have against the Union at the corresponding level, the moving Party shall at that level submit the grievance to the other Party in writing within twenty (20) calendar days of the event giving rise to the grievance or within twenty (20) calendar days of the time the moving Party may have been reasonably expected to have learned of the event and shall provide the following information:

a. The facts upon which the grievance is based.

b. The corrective action sought.

c. If an oral presentation is requested.

**Step 2.** The responding Party shall answer the grievance in writing within twenty (20) calendar days following the date the grievance was received. If the moving Party is not satisfied with the answer, the matter may be referred to the respondent at the regional level, if appropriate, within twenty (20) calendar days following the receipt of the respondent's answer or the date the answer was due for review and resolution. The responding Party shall answer the grievance in writing within twenty (20) calendar days following the date the grievance was received. If the moving Party desires the matter to be submitted to arbitration, they shall, at the national level, so advise the respondent at the national level by certified mail within thirty (30) calendar days

25

following the receipt of the respondent's answer or the date the answer was due.

The Parties will create a national panel of three (3) mutually acceptable arbitrators. Each Party may unilaterally remove an arbitrator from the panel and another arbitrator shall be mutually selected to fill the vacancy. Within seven (7) calendar days after receipt of the request, an arbitrator shall be selected from the panel by the Parties or by alternately striking names until one (1) remains or as otherwise mutually agreed.

**Step 3.** The grievance hearing shall be conducted by the arbitrator as promptly as practicable on a date and at a site mutually agreeable to the Parties. Each Party shall bear the expenses of its own witnesses. The arbitrator shall submit his/her report to the Parties as soon as possible, but in no event later than thirty (30) calendar days following the close of the record before him/her unless the Parties waive this requirement. The decision of the arbitrator is final and binding.

**Section 12.** The arbitrator's fees and expenses of arbitration incurred under this procedure shall be borne equally by the Parties. The Parties must mutually agree to any postponement or cancellation of any scheduled arbitration hearing. If a verbatim transcript of the hearing is made and either Party desires a copy of the transcript, that Party will bear the expense of the copy or copies they obtain. The Parties will share equally the cost of the transcript, if any, supplied to the arbitrator.

**Section 13.** The arbitrator shall confine himself/herself to the precise issue submitted for arbitration and shall have no authority to determine any other issues not so submitted to him/her.

**Section 14.** Failure of a grievant to proceed with a grievance within any of the time limits specified in this procedure shall render the grievance void or settled on the basis of the last decision given by the Employer, unless an extension of time limits has been agreed

upon. Failure of the Employer to render a decision within any time limits specified in this procedure shall entitle the grievant to progress the grievance to the next step without a decision.

**Section 15.** The Parties retain their rights under Title 5 USC 7122 and 7123.

**Section 16.** Expedited arbitrations:

a. If the Union at the national level elects to process a disciplinary/adverse action under this Section, rather than Section 8, it shall within twenty (20) calendar days following the effective date of the disciplinary/adverse action, notify the Regional Labor Relations Branch or ATX-500 for grievances arising out of the ATCSCC, of its intent to proceed under this Section and advise the Director, Office of Labor and Employee Relations, that it desires the matter be submitted directly to expedited arbitration. Within seven (7) calendar days after receipt of the request, an arbitrator shall be selected from the national or regional panel by the Parties or by alternately striking names until one (1) remains. An arbitrator unable to hear an expedited arbitration case within seven (7) calendar days shall be deemed unavailable and the next arbitrator in turn will be selected. The hearing shall be conducted as soon as possible. The arbitrator shall issue a decision as soon as possible, but no later than twenty-one (21) calendar days after the hearing has been held. The necessity for transcripts or filing of briefs shall be determined on a case-by-case basis. The election of either Party to request a transcript and/or file a post hearing brief shall not delay the time frame for the arbitrator to render his/her decision.

b. In cases other than disciplinary/adverse actions, either Party at the national level may refer a particular grievance to expedited arbitration in lieu of the normal arbitration process

26

27

in this procedure. The Parties shall meet and select an arbitrator from the national or regional panel or by alternately striking names.

The hearing shall be conducted as soon as possible and shall be informal in nature. There shall be no briefs, no official transcripts, no formal rules of evidence, and the arbitrator shall issue a decision as soon as possible, but no later than five (5) calendar days after the official closing of the hearing unless otherwise agreed between the Parties. Determinations as to whether expedited arbitration shall be utilized in cases other than disciplinary/adverse actions shall be based on the facts and circumstances of each case; however, only those grievances where the passage of time would preclude a remedy or result in irreparable harm are subject to this expedited procedure. Disagreements as to whether a grievance is appropriate for this expedited procedure shall be referred to the arbitrator for decision.

**Section 17.** The Parties may, by mutual agreement, stipulate the facts and the issue in a particular case directly to an arbitrator for decision without a formal hearing. Argument will be by written brief.

**Section 18.** Questions as to whether or not a grievance is on a matter subject to the grievance procedure in this Agreement or is subject to arbitration shall be submitted to the arbitrator for decision.

**Section 19.** In the handling of grievances under this procedure and where law and OPM regulations permit, the Union shall have access to such information as is relevant and necessary to the processing of the grievance.

**Section 20.** At the request of either Party, the Parties shall meet in an effort to develop an accelerated arbitration process. The Union's representatives shall be on official time if otherwise in a duty status.

# ARTICLE 10
## DISCIPLINARY/ADVERSE ACTIONS

**Section 1.** This Article covers actions involving oral and written admonishments, written reprimands, suspensions, removals, reductions-in-grade or pay, or furloughs of thirty (30) days or less for reasons other than a lapse in Congressional appropriations. Administrative reassignments, transfers to other facilities or locations, retraining and/or recertification, or enforced leave, will not be used as disciplinary/adverse actions.

This Article does not apply to the removal of probationers.

**Section 2.** When the Employer decides that corrective action is necessary, consideration should be given to the application of measures which, while not disciplinary, will instruct the offending employee and/or remedy the problem. When it is determined that discipline is appropriate, informal disciplinary measures should be considered before taking a more severe action. However, it is not necessary to have taken an informal disciplinary measure before administering a formal measure.

**Section 3.** Disciplinary/adverse actions shall not be taken against an employee except for such cause as will promote the efficiency of the service. Any action taken by the Employer shall be supported by a preponderance of the evidence.

**Section 4.** All facts pertaining to a disciplinary/adverse action shall be developed as promptly as possible. Actions under this Article shall be promptly initiated after all the facts have been made known to the Employer.

**Section 5.** Except for oral and written admonishments and written reprimands, the following procedures will be used to take disciplinary/adverse actions:

(1) The Employer shall give the employee written notice proposing the action. The notice period shall be as provided

FILED
1994 MAR 12 PM 2:59

1 94 CV 0574

IN THE UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| NATIONAL AIR TRAFFIC CONTROLLERS ASSOCIATION, MEBA, AFL-CIO, 1150 17th Street, N.W. Washington, D.C.  20036, ) ) ) ) ) ) ) | |
| DAVID CLINKSCALE, 1970 Winchester Road Lyndhurst, Ohio  44124, ) ) ) ) ) ) | JUDGE ALDRICH Civil Action No._____ |
| MARGARET GRAHAM, 27945 Bishop Park Drive Willoughby Hills, Ohio  44092, ) ) ) ) ) ) | COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF |
| PLAINTIFFS, ) ) | |
| v. ) ) | |
| FEDERICO PENA, SECRETARY OF THE DEPARTMENT OF TRANSPORTATION, 400 7th Street, S.W. Washington, D.C.  20590, ) ) ) ) ) ) | |
| and ) ) | |

Exhibit 3

```
DAVID HINSON, ADMINISTRATOR         )
FEDERAL AVIATION ADMINISTRATION     )
800 Independence Avenue, S.W.       )
ALR-100                             )
Washington, D.C.  20591,            )
                                    )
                                    )
            DEFENDANTS.             )
                                    )
_____)
```

## INTRODUCTION

Plaintiffs National Air Traffic Controllers Association, MEBA, AFL-CIO ("NATCA"), David Clinkscale, and Margaret Graham, by and through their undersigned counsel, hereby file this Complaint by which they seek declaratory and injunctive relief for violations of procurement laws and regulations by Federico Pena, Secretary of the Department of Transportation, and David Hinson, Administrator of the Federal Aviation Administration. The violations have occurred in the course of the Federal Aviation Administration's efforts to contract out approximately one hundred and fifteen (115) "VFR Level I" air traffic control facilities which are located throughout the United States to private contractors.

The FAA's decision will have a detrimental effect on the 1,500 federal government employees whose positions will be eliminated at the facilities in which they are currently employed. The affected air traffic control specialists will either be forced to relocate to another tower facility in order to remain employed as air traffic control specialists, subject to qualification at the new facility, or be forced to retire or

2

resign from federal service.

## NATURE OF ACTION, JURISDICTION AND VENUE

1.     This is a civil action brought by the National Air
Traffic Controllers Association, MEBA, AFL-CIO ("NATCA"), David
Clinkscale, and Margaret Graham, for declaratory and injunctive
relief for violations of federal procurement laws by the
Defendants Department of Transportation ("DOT") and the Federal
Aviation Administration ("FAA").

2.     This Court has jurisdiction over this action pursuant
to 28 U.S.C. § 1331 because the United States of America is a
party, and further, because this action presents issues involving
federal law and regulations under the Budget and Accounting Act
of 1921 as amended, 31 U.S.C. § 101 et seq. ("the 1921 Act");
Office of Federal Procurement Policy Act Amendments of 1979, as
amended, 41 U.S.C. § 401 et seq. ("the Procurement Policy Act");
and the Office of Management and Budget ("OMB") Circular No. A-76
("the Circular").

3.     Venue of this action lies properly in the United States
District Court Northern District of Ohio pursuant to 28 U.S.C.
Section 1391(e).

## PARTIES

4.     Plaintiff National Air Traffic Controllers Association,
MEBA, AFL-CIO ("NATCA") is a national labor organization which
represents approximately 12,000 air traffic control specialists
employed in the FAA's facilities throughout the United States.

3

5.   Plaintiffs David Clinkscale and Margaret Graham are currently employed by the Federal Aviation Administration as air traffic control specialists ("ATCS") at a Level I facility, Burke Lakefront, in Cleveland, Ohio.  Plaintiff Clinkscale is a permanent federal government employee and has been employed as an air traffic control specialist for four (4) years.  Plaintiff Graham is also a permanent federal government employee who has been employed with the FAA for fourteen (14) years.

6.   Defendant Federico Pena is the Secretary of the United States Department of Transportation.  Defendant David Hinson is the Administrator for the Federal Aviation Administration.  DOT AND FAA are the federal government agencies responsible for air traffic management within the United States.

<u>**EXHAUSTION OF ADMINISTRATIVE REMEDIES**</u>

7.   The administrative review procedure contained in the Procurement Policy Act, and in particular, the Circular, does not afford Plaintiffs any means of administrative redress since the Federal Aviation Administration has failed to perform the cost-comparison study which would provide the basis for any review under the Circular's administrative review procedure.

<u>**BACKGROUND**</u>

<u>The Requirements of the Budget and Accounting Act
of 1921 and the Office of Procurement Policy
Amendments of 1979.</u>

8.   The 1921 Act and the Procurement Policy Act describe the basic tenets of coordination of the budget process for the executive and legislative branches of the federal government.

4

The Procurement Policy Act provides the broad policy of the
United States government in the area of procurement which was
promulgated "to promote economy, efficiency and effectiveness."
41 U.S.C. § 401.  The Circular sets out a mandatory process for
the comparison of the costs incurred by the government in the
performance of certain functions by the government itself versus
those that would be incurred if those functions were performed by
private entities.  The Circular requires that agencies perform
cost-comparisons unless activities have been designated as
"governmental functions."  The Circular provides that contracting
out is appropriate only if a commercial service can supply the
goods and services more economically than an in-house operation.

9.  The Circular also mandates that "an existing in-house
activity shall be converted to contract performance on the basis
of economy unless the projected cost advantage to the Government
is at least ten percent (10%) of the in-house personnel-related
cost for the performance period."  Circular Supplement, Part I,
para. G.  If these mandatory requirements are not met, the agency
may not contract out to private commercial enterprises.  A true
and correct copy of the Circular Supplement is attached as
Exhibit A.

10.  The Procurement Policy Act makes clear that the policy
commitment to economy and efficiency set forth in the Circular
are mandatory, not discretionary.  The statute provides standards
against which to evaluate an agency's exercise of discretion.
For example, the Secretary of a federal government agency may not

5

contract out as a matter of discretion nor may the decision rest on whether the Agency deems the contract or the in-house service to cost less.  The statute requires a measurable, objective comparison of costs.

11.  The Circular directs that no executive agency will engage in or contract for commercial/industrial activities except in accordance with the provisions of the Circular, or otherwise provided by law.  Circular, Part IV, Chapter I, Para. A.

12.  The Circular also provides that "cost-comparisons may be waived by the assistant secretary ... and the activity converted to contract."  The Circular further provides that the waiver must include a written determination signed by the assistant secretary or designee that effective price competition is available and the reasons why the in-house operation has no reasonable expectation of winning the competition (results of previous cost-comparisons of similar activities, GAO or other audit findings, etc.).  Circular, Part I, Chapter 2, Para. A, Sec. 2.

### VIOLATIONS OF OMB CIRCULAR NO. A-76

13.  By letter of February 9, 1993 to William Pollard, Associate Administrator for Air Traffic, NATCA requested information on the economic studies conducted by the Agency for the purposes of determining the costs involved in a plan by the FAA to contract out all Level I tower facilities, including all cost-comparison studies required by OMB Circular No. A-76.  See Exhibit B.

6

14.  By letter of April 16, 1993, the FAA replied to NATCA's request for information and stated that it had no plans to contract out Level I facilities.  Its plan to contract out Level I facilities was described as "one of the many potential cost-saving vehicles under review by the agency...[i]f and when the agency makes a firm decision to begin converting towers to contract operations, we will give NATCA formal notification and the relevant information well in advance so as to allow for the necessary impact bargaining."  See Exhibit C.

15.  On June 29, 1993, NATCA made a second request for information regarding contracting out of Level I air traffic control facilities necessary to ensure the FAA's compliance with Federal law and all OMB regulations.  See Exhibit D.  The FAA failed and refused to comply with this request.

16.  In September 1993, the FAA verbally informed NATCA officials that the decision to contract out would proceed based on Congressional budgetary directives.  Notwithstanding NATCA's position that it opposed any FAA proposal or plan to contract out Level I tower facilities, NATCA agreed to participate with the FAA in the Quality Through Partnership ("QTP") program in an effort to discuss, inter alia, issues relevant to the contracting out decision.  In early January 1994, NATCA received information through its participation in the QTP that the FAA intended to solicit bids for private contractors for Level I facilities commencing on February 1, 1994.

17.  On January 13, 1994, NATCA hand-delivered a third

7

detailed request to the FAA for information concerning its
proposed contracting out of Level I facilities. This request was
designed to elicit information necessary to determine whether or
not the FAA's decision to contract out Level I air traffic
control facilities was in accordance with OMB Circular No. A-76
and other applicable law. See Exhibit E. Based on information
and belief, NATCA understood that bids from private contractors
for some of the Level I facilities were to be solicited on or
about February 1, 1994. NATCA further requested that the FAA
cancel or delay the process until the information and documents
which NATCA had requested could be reviewed and the FAA's
compliance with applicable law verified.

18. On January 28, 1994, NATCA hand-delivered yet another
information request to the Agency emphasizing the urgency of its
request in light of its understanding that the contracting out
procedure was underway. See Exhibit F. NATCA again demanded
that the FAA provide the documents and information responsive to
the Union's information request. To date, the FAA has continued
to fail and refuse to supply NATCA with information necessary to
determine the lawfulness of its decision to contract out Level I
air traffic control facilities.

19. By letter of February 18, 1994, the FAA stated that the
information and documents requested by NATCA in its letters of
January 13 and 28, 1994 were "unavailable" because the Agency had
obtained a waiver of the cost-comparison study mandated by the
Circular. See Exhibit G. Attached to the February 18, 1994,

8

letter was a document purporting to be a permanent waiver to perform A-76 cost-comparisons signed by Nicholas S. Stoer, Assistant Administrator for Budget and Accounting for the FAA. The waiver is dated January 12, 1994. The purported waiver also made reference to a telephone conversation on September 21, in which an OMB No. A-76 coordinator allegedly "concurred" in the waiver. Id.

20. On February 23, 1994, NATCA immediately notified the FAA by telephone that the information provided was not responsive to the request made in its letters dated January 13 and 28, 1994. Further, the FAA's claim that the Circular's requirements may be waived are not supported by the "waiver" on its face since it does not comply with the provisions set forth in the Circular. The purported waiver does not include "a written determination signed by the assistant secretary or designee that effective price competition is available" and fails to demonstrate the reasons why the in-house operation has no reasonable expectation of winning the competition.

21. Upon information and belief, the FAA's claim of waiver of the Circular's requirements is groundless and the FAA misrepresented the factual basis for the "waiver" in its contention that such a "waiver" had been "concurred in" by the OMB.

### COUNT ONE

22. The FAA has proceeded with its decision to contract out all of its Level I air traffic control facilities by, inter alia,

9

soliciting bids from private contractors without first complying with the mandatory requirements of the OMB Circular No. A-76.

23.  The FAA's assertion that it is exempt from the requirements of the Circular by virtue of a waiver which, on its face is invalid, constitutes a violation of the OMB Circular's waiver requirements.

24.  Plaintiffs will be injured by loss of government employment, wages and benefits should the FAA complete its invalid and unlawful process of contracting out Level I air traffic control facilities.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court:

1.  Declare, pursuant to 28 U.S.C. § 2201, that the Defendants' decision to contract out approximately one hundred and fifteen (115) Level I facilities violates the Budget and Accounting Act of 1921, as amended, 31 U.S.C. § 101 et seq., and the Office of Procurement Policy Act Amendments of 1979, 41 U.S.C. § 401, by failing to comply with the requirements set forth in the OMB Circular No. A-76 and failing to obtain a valid waiver of said requirements;

2.  Enjoin the Defendants from implementation of their plan to contract out all Level I air traffic control facilities unless and until Defendants comply with applicable law; and

10

3.    Award such other relief to Plaintiffs as it deems just
and proper, including interest, attorney's fees and costs.

_William W. Osborne, Jr. (iy)_

William W. Osborne, Jr.
Elizabeth J. Head
James E. Grooms
BEINS, AXELROD, OSBORNE, MOONEY &
GREEN, P.C.
The Colorado Building, Suite 700
1341 G Street, N.W.
Washington, D.C.  20005-3105
(202) 783-0010

_Eben O. McNair, IV_

Eben O. McNair, IV
SCHWARZWALD & ROCK, L.P.A.
616 Bond Court Building
1300 East Ninth Street
Cleveland, Ohio  44114-3105
(216) 566-1600

Counsel for Plaintiffs

Dated:  March 17, 1994

11

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| NATIONAL AIR TRAFFIC CONTROLLERS ASSOCIATION et al., | ) ) ) | Case No. 1:94CV0574 |
| Plaintiffs, | ) ) ) ) ) ) | TRACY JENSON PRO SE MOTION FOR ORDER OF CONTEMPT AND REQUEST FOR HEARING |
| v. | ) ) ) | |
| NORMAN Y. MINETA, Secretary, U.S. Department of Transportation, et al., | ) ) ) | |
| Defendants. | ) | |

COMES NOW Tracy Jenson pro se and as a member of the National Air Traffic Controllers

Association at the time the court issued it's order in this matter in 1998, and hereby files his Motion

for Order of Contempt and Request for Hearing.

FACTS

In March of 1998, Judge Ann Aldrich issued a ruling and order against the FAA, temporarily

stopping a program to "contract out" certain low level Air Traffic Control Towers, the delay

caused by the ruling and the order, caused Mr. Jenson, a member of the National Air Traffic

TRACY JENSON PRO SE MOTION FOR ORDER OF CONTEMPT
AND REQUEST FOR HEARING - 1

Exhibit 4

Controllers Association at the time of Judge Ann Aldrich's Ruling and Order in March of 1998, along with 29 other Air Traffic Controllers to be put into a new pay system differently resulting in smaller pay increases than other identical employees received, and smaller pay increase than they would have received without the delay in the program.

### ARGUMENT

The FAA failed to inform the court that if the people in the fourth year of the program (to contract out towers) were delayed in moving, that it may cause them to be put into a new pay system differently resulting in smaller pay increases than other identical employees received, and smaller pay increases than they would have received without the delay in the program.

This is in fact what eventually happened, the FAA because of the delay, treated these employees differently, bypassing pay regulations and put them all at the bottom of their pay bands instead of putting them at the same level of pay they would have been at if the FAA had not caused the delay due to their negligence. The FAA did not establish their pay by using the same procedures the other controllers in the first three years had applied to them, i.e. moving them under the GS pay rules and then applying the conversion rule to put them into the new pay system, in effect thumbing their nose at the court by saying since you ruled against us we will put all the delayed employees at the bottom of their pay band, instead of where they would have been if the delay had not occurred. I Tracy Jensen and the other controllers affected, request the judge to order the FAA to retro-actively transfer us to our new facilities under the "GS" pay regulation when we moved to our new facilities in October/November 1999, and then apply Rule 35, the pay system transition rule to put us into the

TRACY JENSON PRO SE MOTION FOR ORDER OF CONTEMPT
AND REQUEST FOR HEARING - 2

new pay system and calculate what the difference in pay would be and then pay all back pay. In other words, set our pay at the same level it would have been if we had not been delayed by the FAA negligence. In addition since the FAA's bypassing of the proper regulations and their subsequent refusal to correct the situation resulted in myself being pressured to resign to use part of my retirement money to pay our attorney fees, I would also ask the court to order the FAA to re-instate me at my facility of choice in Washington State, with consideration for some of the pay I would have received if I would not have been put under pressure to resign. Alternatively I would request that the court tell the FAA attorney that they will put me on all the selection lists for managers to select from in the Western Pacific Region when hiring resumes (probably in September).

## CONCLUSION

Therefore the failure of the FAA to inform the court of the consequences to employees, then treating employees differently because of the courts ruling is contempt of court, since it involves the failure to apply the proper sequences of pay regulations, which causes the employees to be "victims" of the court without that being the intention of the court. If the court would have been informed that a new pay system was coming into effect during the delay period (one year), then the court would have been able to include in its ruling that in no way will any employee be negatively affected by its ruling, financially or otherwise. This failure to inform the court caused the court to make a decision on partial knowledge of all the factors involved, and believe it was not the courts intent to cause financial harm to the employees, but the FAA then did cause financial harm due to the courts ruling.

I Tracy Jenson pro se would like to request the court to set for hearing this Motion for Order of

Contempt and Request for Hearing at it's earliest convenience

DATED this _3RD_ day of _SEPTEMBER_ 2004

_Tracy M. Jenson_

Tracy Jenson

Pro se

3277 N. 6th Avenue   P.O. BOX 35

Spirit Lake, ID  83869

TRACY JENSON PRO SE MOTION FOR ORDER OF CONTEMPT
AND REQUEST FOR HEARING - 4

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the _3 RD_ day of _SEPTEMBER_ , 2004, I caused to

be served a true and correct copy of the foregoing MOTION FOR ORDER OF CONTEMPT

AND REQUEST FOR HEARING by the method indicated below, and addressed to the

following:

Kent W. Penhallurick
801 W. Superior Ave., Ste., 400
U.S. Federal Courthouse,
Cleveland, OH  44113

☒ U.S. MAIL  _CERTIFIED_
☐ HAND DELIVERED
☐ OVERNIGHT MAIL
☐ TELECOPY (FAX) to

Sandra M. Schrailbman
Susan Uliman
Federal Programs Branch, Civil Division
20 Massachusetts NW, 7th Floor
Washington, D.C.  20001

☒ U.S. MAIL  _CERTIFIED_
☐ HAND DELIVERED
☐ OVERNIGHT MAIL
☐ TELECOPY (FAX) to

Elizabeth J. Head, Esq.
James Grooms, Esq.
1341 G. St. NW, Ste., 700
Washington D.C.  20005

☒ U.S. MAIL  _CERTIFIED_
☐ HAND DELIVERED
☐ OVERNIGHT MAIL
☐ TELECOPY (FAX) to

TRACY JENSON PRO SE MOTION FOR ORDER OF CONTEMPT
AND REQUEST FOR HEARING  - 6

William W. Osborne, Jr., Esq.
4301 Connecticut Ave, NW, #108
Washington D.C. 20008

☒ U.S. MAIL  *CERTIFIED*
☐ HAND DELIVERED
☐ OVERNIGHT MAIL
☐ TELECOPY (FAX) to

Eben McNair
Schwarzwald and McNair
616 Penton Media BLDG
1300 E. 9th St.
Cleveland, OH 44114

☒ U.S. MAIL  *CERTIFIED*
☐ HAND DELIVERED
☐ OVERNIGHT MAIL
☐ TELECOPY (FAX) to

*Tracy A. Jenson*

*SEPT. 3RD 2004*

TRACY JENSON PRO SE MOTION FOR ORDER OF CONTEMPT
AND REQUEST FOR HEARING  - 7

VERIFICATION

STATE OF ~~IDAHO~~ *WASHINGTON*  )
            *SPOKANE*  )    ss.
County of ~~Kootenai~~  )

Tracy Jensen, being first duly sworn, deposes and says:

That I have read the foregoing MOTION FOR ORDER OF CONTEMPT AND

REQUEST FOR HEARING, know the contents thereof and state the same to be true and correct

as I verily believe.

SUBSCRIBED AND SWORN to before me this *2nd* day of *September*, 2004.



_____
NOTARY PUBLIC for the State of ~~Idaho~~ *Washington*
Residing at *Spokane*
My Commission Expires *Feb-2001*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| Tracy Jenson, <br>     Plaintiff | : <br> : <br> :    Case No.  1:07cv00359-RWR <br> : <br> v.                   :    Judge Richard W. Roberts |

Tracy Jenson,
    Plaintiff              :

                       :    Case No.  1:07cv00359-RWR

v.                      :    Judge Richard W. Roberts

National Air Traffic Controllers  :
Association, AFL-CIO

                       :

and                     :

Federal Aviation Administration  :
    Defendants            :

_____:

## <u>ORDER</u>

    Upon consideration of Defendant NATCA's Motion to Dismiss, or in the alternative, NATCA's Motion for Summary Judgment, the Memorandum of Law in Support of that Motion, any responses, and the entire record, it is ordered that the Motion be and hereby is GRANTED.

_____        _____
Date                             United States District Judge

## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

Tracy Jenson,             :
P.O. Box 35           :
Spirit Lake, ID 83869   :
           Plaintiff   :
              :      Case No.  1:07cv00359-RWR
              :
v.                  :      Judge Richard W. Roberts
              :
Federal Aviation Administration  :
800 Independence Ave., S.W.  :
Washington, D.C. 20591   :
              :
and               :
              :
National Air Traffic Controllers  :
Association, AFL-CIO   :
1325 Massachusetts Ave., N.W.  :
Washington, D.C. 20005   :
           Defendants   :
_____ :

## DECLARATION OF WILLIAM W. OSBORNE, JR.

William W. Osborne, Jr., hereby declares, as follows in accordance with 28

U.S.C. §1746:

1. I am the founder and principal of Osborne Law Offices, P.C. located at 4301

Connecticut Avenue, N.W., Suite 108, Washington, D.C. 20008.  I was admitted to the

District of Columbia Bar in 1975 and have been actively and continuously engaged in

the practice of labor and employment law since that time.  I have served as counsel to

the National Air Traffic Controllers Association, AFL-CIO ("NATCA") since 1986.

2. I was counsel of record for Plaintiff NATCA in a lawsuit filed in the U.S. District

Court for the Northern District of Ohio in 1994, Case No. 1:94CV00574.

3.  Exhibit 1 is a true and correct copy of the Memorandum and Order issued by the Court in Case No. 1:94CV00574 in response to Plaintiff Jenson's Motion for Contempt.

4. Exhibit 2 is a true and correct copy of the Collective Bargaining Agreement between NATCA and the Federal Aviation Administration effective, February 25, 2001.

5. Exhibit 3 is a true and correct copy of the Complaint filed by NATCA in U.S. District Court for the Northern District of Ohio in 1994, Case No. 1:94CV00574.

6.  Exhibit 4 is a true and correct copy of the Motion for Contempt filed by Tracy Jenson in Case No. 1:94CV00574 in September 2005.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 26th day of February 2007.

/s/ William W. Osborne, Jr.
William W. Osborne, Jr.