**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **TRACY JENSON**,                 ) | |
|                   ) | |
|        Plaintiff,     ) | |
|                   ) | |

 

TRACY JENSON,              )

                      )

        Plaintiff,    )

                      )

v.                       )     **Civil Action No.: 07-0359 (RWR)**

                      )

**THE FEDERAL AVIATION**     )

**ADMINISTRATION, et al.,**    )

                      )

      Defendants.   )

                      )

## FEDERAL DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, Defendant, the Federal Aviation Administration ("FAA"), through counsel, respectfully moves this Court for dismissal of Plaintiff's complaint. As will be more fully discussed, this Court lacks subject matter jurisdiction over this case, and therefore dismissal is required. In support of this Motion, Defendant refers the Court to the accompanying memorandum of points and authorities. A proposed Order consistent with this Motion also is attached.

Plaintiff, who is proceeding pro se, is hereby advised that failure to respond to this motion may result in the district court granting the motion. See Fox v. Strickland, 837 F.2d 507, 509 (D.C. Cir. 1988). Plaintiff should also take notice that any factual assertions contained in the affidavits and other attachments in support of defendant's motion will be accepted by the Court as true unless the plaintiff submits his own affidavits or other documentary evidence contradicting the assertions in the defendant's attachments. See Neal v. Kelly, 963 F.2d 453, 457 (D.C. Cir. 1992), Local Civil Rule 7(h) and Fed. R. Civ. P. 56(e), which provides as follows:

Supporting and opposing affidavits shall be made on

personal knowledge, shall set forth such facts as would
be admissible in evidence, and shall show affirmatively that
the affiant is competent to testify to the matters stated therein.
Sworn or certified copies of all papers or parts thereof referred to
in an affidavit shall be attached thereto or served therewith.  The
court may permit affidavits to be supplemented or opposed by
depositions, answers to interrogatories, or further affidavits.
When a motion for summary judgment is made and supported as
provided in this rule, an adverse party may not rest upon the
mere allegations or denials of the adverse party's pleading, but
the adverse party's response, by affidavits or as otherwise provided
in this rule, must set forth specific facts showing that there is a genuine
issue for trial.  If the adverse party does not so respond, summary
judgment, if appropriate, shall be entered against the adverse party.


Respectfully submitted,


/s/ Jeffrey A. Taylor
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


/s/ Rudolph Contreras
RUDOLPH CONTRERAS, D.C. BAR #  434122
Assistant United States Attorney


/s/ Michelle N. Johnson
MICHELLE N. JOHNSON, D.C. BAR # 491910
Assistant United States Attorney
United States Attorney's Office
Civil Division
555 4th Street, N.W. – Room E4212
Washington, D.C. 20530
(202) 514-7139


COUNSEL FOR DEFENDANT

Agency Counsel:

Parisa Naraghi, Esq.
Personnel & Labor Law Staff
Office of the Chief Counsel
Federal Aviation Administration
600 Independence Avenue, S.W., Room 1E100
Washington, DC 20591

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **TRACY JENSON**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Civil Action No.: 07-0359 (RWR)** |
| | ) | |
| **THE FEDERAL AVIATION** | ) | |
| **ADMINISTRATION, et al.,** | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## FEDERAL DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Defendant, the Federal Aviation Administration ("FAA"), hereby moves for dismissal of Plaintiff's complaint. As will be further discussed below, Plaintiff, a former air traffic controller with the FAA, failed to file a proper administrative grievance prior to initiating this action. Accordingly, dismissal is required pursuant to Federal Rule of Civil Procedure 12(b)(1) because this Court lacks subject matter jurisdiction.

## BACKGROUND

Plaintiff, Tracy Jenson, is a former Air Traffic Control Specialist at the Boeing Field, Washington, Air Traffic Control Tower. Exhibit ("Ex.") A, Notification of Personnel Action. Plaintiff resigned from his position effective April 5, 2003. Ex. B, Request for Personnel Action.

During the period of his employment with the FAA, Plaintiff was exclusively represented by the National Air Traffic Controllers Association ("NATCA"), the union that represents all bargaining-unit air traffic controller specialists. Ex. C, Excerpts from Agreement between the National Air Traffic Controllers Association AFL/CIO and the FAA/Department of

Transportation.  NATCA and FAA have a negotiated collective bargaining agreement ("CBA") that governed the terms and conditions of Plaintiff's employment.  Id.  The CBA, among other matters, includes a grievance procedure.  Id.  The Agreement in relevant part provides:

> This procedure provides for the timely consideration of
> grievances.  Except as limited or modified by Sections
> 3, 4 and/or 5, it shall be the exclusive procedure
> available to the Parties and the employees in the
> unit for resolving grievances.

Id., Art. 9, sec. 2.  The CBA defines "grievance" broadly, i.e., as "any complaint . . . by any employee concerning any matter relating to the employment of the employee[.]"  Id., Art. 9, sec. 1; see also 5 U.S.C. § 7103(a)(9).

On January 29, 2007, Plaintiff filed a complaint in the Small Claims and Conciliation Branch of the Superior Court of the District of Columbia.  See Notice of Removal filed in this case, attaching Complaint filed by Tracy Jenson.  Plaintiff's complaint, in its entirety, alleges that NATCA and the FAA

> attempted to stop my promotion, only succeeding in delaying my
> promotion by 14 months.  Then upon promotion agreed to use the
> wrong rule to change pay systems putting my pay at $30,000 per
> year less than if I would have been promoted on time.  Return of
> union dues and reason for salary from union.  Breach of contract,
> fraudulent acceptance of union dues, financial assault.

Id.

_____Plaintiff's complaint appears to stem from an agreement reached in the spring of 1998 between NATCA and the FAA to create a new Air Traffic Control (ATC) plan for all bargaining unit air traffic controllers working in en route or terminal facilities, which included Plaintiff.  Ex.

D, Excerpts from Memorandum of Understanding.[1]  Per this agreement, certain classified

facilities (Level 1 facilities) would be contracted out at the end of the 1998 fiscal year and

employees in those facilities would continue to be paid under existing pay policies, with the

exception that they wold receive a 5% base pay increase in the first year.  Id. ¶ 35.  These

employees would also receive an additional 4.1% increase retroactive to October 1, 1998, to

compensate for the elimination of the Air Traffic Revitalization Act differential.  Id.  To

memorialize this agreement, on April 27, 1999, the FAA and NATCA signed a Memorandum of

Understanding ("MOU") addressing the reassignment of employees within Level 1 facilities to

positions in the new ATC plan.  Ex. E, Memorandum of Understanding.

On October 24, 1999, Plaintiff was reassigned from Felts Field in Spokane, WA (a Level

1 facility) to the Boeing Field, Washington Air Traffic Control Tower, a position within the ATC

pay plan.  See Ex. A.  Per the terms of the MOU, Plaintiff received the applicable pay increases.

Id.  Plaintiff resigned from the FAA on April 5, 2003.  Ex. B.

One month after his resignation, Plaintiff filed an appeal with the Merit Systems

Protection Board ("MSPB") challenging his reassignment to the Boeing Field, Washington Air

Traffic Control Tower, which he claimed resulted in his loss of grade and pay due to the FAA's

non-compliance with pay regulations.  Ex. F, MSPB Appeal Form.  The MSPB dismissed

Plaintiff's appeal because Plaintiff did not suffer any loss of pay and he voluntarily resigned

from his position, actions over which the MSPB lacked jurisdiction.  Ex. G, MSPB initial

---

[1]NATCA had previously filed suit against the FAA challenging the FAA's decision to privatize operations at Level 1 air traffic control towers.  See generally National Air Traffic Controllers Assoc. v. Pena, 944 F. Supp. 1337, 1340-41 (N.D. Ohio 1996).

decision dated July 29, 2004.[2]

Thereafter, Plaintiff and several other Plaintiffs filed a suit in the United States Court of Federal Claims seeking monetary damages based on the alleged failure of the government to re-classify them at higher grade positions and correspondingly higher salaries. Ex. I, Complaint filed in the United States Court of Federal Claims, Brodowy et al. v. United States, Civil Action No. 2005-961. In their complaint, Plaintiffs seek back wages based on the alleged failure of the FAA to properly convert them into the new ATC pay system described supra at 2-3. The court granted the defendant's motion to dismiss for lack of subject matter jurisdiction, and the case is pending appeal in the Court of Appeals for the Federal Circuit. Ex. J.

Undeterred by the prior rulings against him, on January 16, 2006, Plaintiff brought another action against the FAA before the Equal Employment Opportunity Commission, which was dismissed on March 1, 2006, for failure to state a claim and untimeliness. Ex. K, Letter to Mr. Jenson dated March 1, 2006. Despite these numerous rulings, at no time has Plaintiff sought to institute a grievance, pursuant to the applicable CBA, concerning the issues raised in his current, and prior, complaints.

## ARGUMENT

## I.    STANDARD OF REVIEW

In reviewing a motion to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the court must accept the complaint's well-pled factual allegations as true and draw all reasonable inferences in the plaintiff's favor." Thompson v.

---

[2]Plaintiff then filed a Petition for Review of the decision of the MSPB which was denied on May 26, 2004. Ex. H. Plaintiff did not appeal the MSPB decision to the United States Court of Appeals for the Federal Circuit, as the CSRA requires. 5 U.S.C. § 7703(b)(1).

Capitol Police Board, 120 F. Supp. 2d 78, 81 (D.D.C. 2000) (citations omitted).  "The court is

not required, however, to accept inferences unsupported by the facts alleged or legal conclusions

that are cast as factual allegations."  Rann v. Chao, Dep't of Labor, 154 F. Supp. 2d 61, 64

(D.D.C. 2001) (citing Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990)).

 A court may resolve a motion to dismiss for lack of subject matter jurisdiction under Rule

12(b)(1) in two ways.  First, the court may determine the motion based solely on the complaint.

Herbert v. National Academy of Science, 974 F.2d 192, 197 (D.C. Cir. 1992).  Alternatively, to

determine the existence of jurisdiction, or lack thereof, a court may look beyond the allegations

of the complaint, consider affidavits and other extrinsic information, and ultimately weigh the

conflicting evidence.  See id.; see also Haase v. Sessions, 835 F.2d 902, 905 (D.C. Cir. 1987) ("It

seems clear . . . that the plain language of Rule 12(b) permits only a 12(b)(6) motion to be

converted into a motion for summary judgment").  Courts have found dismissal of claims

appropriate for lack of subject matter jurisdiction on the following grounds - lack of standing,

failure to exhaust administrative remedies, and sovereign immunity.  4 Wright & Miller:  Federal

Prac. & Proc. § 1350 (R12) (2002 Supplement).

## II.  THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER PLAINTIFF'S CLAIM.

 The Civil Service Reform Act of 1978, 5 U.S.C. §§ 7101 et seq. ("CSRA"), is "an

integrated scheme of administrative and judicial review, designed to balance the legitimate

interests of the various categories of federal employees with the needs of sound and efficient

administration."  United States v. Fausto, 484 U.S. 439, 445 (1988).  With the exception of

claims concerning certain forms of employment discrimination not applicable here, in no

circumstances does the CSRA **or any other statute** expressly permit a federal employee to bring

a claim concerning personnel matters in district court.  Thus, so long as a federal employee's claim falls within the scope of the CSRA, the employee is precluded from suing in district court. Bush v. Lucas, 462 U.S. 367, 368 (1983) (precluding Bivens actions); Fausto, 484 U.S. at 454 (precluding action under the Back Pay Act); Graham v. Ashcroft, 358 F.3d 931 (D.C. Cir. 2004); Harrison v. Bowen, 815 F.2d 1505, 1515-1517 (D.C. Cir. 1987) (precluding suit under the Administrative Procedures Act); Veit v. Heckler, 746 F.2d 508, 511 (9th Cir. 1984) (precluding suit under the Administrative Procedure Act).

Pursuant to section 7121(a)(1) of Title 5 of the United States Code, "[e]xcept as provided, . . . any collective bargaining agreement shall provide procedures for the settlement of grievances . . . ." 5 U.S.C. § 7121(a)(1).  These "procedures shall be the exclusive administrative procedures for resolving grievances which fall within [the CBA's] coverage." Id. As such, "the CSRA generally precludes district courts from taking jurisdiction over CSRA-related claims."  Sculimbrene v. Reno, 158 F. Supp.2d 1, 5 (D.D.C. 2001) (internal citation omitted).  Indeed, a district court in this district has specifically acknowledged that "Title 5 of the United States Code section § 7121(a)(1) does not expressly provide this Court with the jurisdiction to resolve a grievance under the NATCA/FAA CBA which contains negotiated grievance procedures."  Filebark v. United States Dep't of Transportation, 468 F. Supp. 2d 3, 6 (D.D.C. 2006).

Filebark is analogous to the present case.  In Filebark, one current and one former Air Traffic Control Specialist filed suit against the FAA for declaratory and injunctive relief as well as "back pay from defendants[ ] for allegedly violating agency rules and the collective bargaining agreement between the FAA and [NATCA]."  Id. at 4.  Specifically, plaintiffs alleged

6

that "the air traffic counts used to determine their compensation . . . [were] inaccurate because they fail[ed] to take into account military traffic . . . ." <u>Id.</u> at 5.   In granting dismissal, the court, relying on <u>Johnson v. Peterson</u>, 996 F.2d 397 (D.C. Cir. 1993), adopted the <u>Johnson</u> court's holding that courts "will recognize federal court jurisdiction over a matter covered by the Civil Service Reform Act of 1978 . . . <u>only</u> where the statute expressly provides for such jurisdiction." <u>Id.</u> at 6 (citing <u>Johnson</u>, 996 F.2d at 401).   The court concluded that it would "'decline to create a method by which the employee can short-circuit the administrative process without the explicit authorization of Congress.'"   <u>Id.</u> (quoting <u>Johnson</u>, 996 F.2d at 401).

As in <u>Filebark</u>, Plaintiff here has attempted to "short-circuit the administrative process" by seeking relief in this court without exhausting the grievance procedures set forth in the governing CBA.   <u>See</u> Ex. C, Art. 9, sec. 2.   Indeed, Plaintiff has never sought to file a grievance pursuant to the applicable CBA contesting the issues he seeks to raise in this Court.   As a result, this Court lacks subject matter jurisdiction over Plaintiff's claim and dismissal is warranted.[3]

## <u>CONCLUSION</u>

For the reasons set forth above, Defendant, the FAA, respectfully requests that the Complaint be dismissed with prejudice.

Respectfully submitted,

        /s/
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

---

[3]At the least, this action should be stayed pending a decision by the Court of Appeals for the Federal Circuit as that court is considering the issue raised by Plaintiff's complaint in this Court.

7

_____/s/_____

RUDOLPH CONTRERAS, D.C. BAR #  434122

Assistant United States Attorney


_____/s/_____

MICHELLE N. JOHNSON, D.C. BAR # 491910

Assistant United States Attorney

United States Attorney's Office

Civil Division

555 4th Street, N.W. – Room E4212

Washington, D.C. 20530

(202) 514-7139


COUNSEL FOR DEFENDANT, THE FEDERAL
AVIATION ADMINISTRATION


Agency Counsel:

Parisa Naraghi, Esq.

Personnel & Labor Law Staff

Office of the Chief Counsel

Federal Aviation Administration

600 Independence Avenue, S.W., Room 1E100

Washington, DC 20591

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing Defendant's Motion to Dismiss Plaintiff's Complaint

was mailed by depositing a copy of it in the U.S. Mail, first class postage prepaid, addressed to:

TRACY JENSON
P.O. Box 35
Spirit Lake, ID 83869

on this 19th day of March, 2007.

_____
/s/
MICHELLE N. JOHNSON

# EXHIBIT A

## Notification of Personnel Action

| 1. Name (Last, First, Middle) | | | | | | 2. Social Security Number | | | 3. Date of Birth | 4. Effective Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Jenson, Tracy A. | | | | | | ▮▮▮▮▮▮▮ | | | 11-10-57 | 10-24-99 |

| 5-A. Code | 5-B Nature of Action | | | | | 6-A Code | 6-B Nature of Action | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 002 | CORRECTION | | | | | 721 | REASSIGNMENT | | | |
| 5-C. Code | 5-D Legal Authority | | | | | 6-C. Code | 6-D Legal Authority | | | |
| ZVB | P.L. 104-50 | | | | | ZVB | P.L. 104-50 | | | |
| 5-E. Code | 5-D Legal Authority | | | | | 6-E. Code | 6-F. Legal Authority | | | |

| 7. FROM: Position Title and Number | 15. TO: Position Title and Number |
|---|---|
| AIR TRAFFIC CONTROL SPECIALIST (T) | AIR TRAFFIC CONTROL SPECIALIST |
| PD NO = NM-6213.28   BU NO = NMAT233 | PD NO = NM-97136   BU NO = NMAT222 |
| ORG = NMNT02   CST CNTR = 2788 | ORG = NMNT20   CST CNTR = 2783 |

| 8. Pay Plan | 9. Occ. Code | 10. Grade/Level | 11. Step/Rate | 12. Total Salary | 13. Pay Basis | 16. Pay Plan | 17. Occ. Code | 18. Grade/Level | 19. Step/Rate | 20. Total Salary | 21. Pay Basis |
|---|---|---|---|---|---|---|---|---|---|---|---|
| AT | 2152 | 10 | 10 | $51,586 | PA | AT | 2152 | HH | 00 | $56,010 | PA |

| 12A. Basic Pay | 12B. Locality Adj. | 12C. Adj Basic Pay | 12D. Other Pay | 20A Basic Pay | 20B. Locality Adj. | 20C. Adj Basic Pay | 20D. Other Pay |
|---|---|---|---|---|---|---|---|
| $48,726 | $2,860 | $51,586 | $0 | $51,880 | $4,130 | $56,010 | $0 |

| 14. Name and Location of Position's Organization | 22. Name and Location of Position's Organization |
|---|---|
| NORTHWEST MOUNTAIN REGION | NORTHWEST MOUNTAIN REGION |
| 1601 LIND AV SW, RENTON, WA 98055-4056 | 1601 LIND AV SW, RENTON, WA 98055-4056 |
| AIR TRAFFIC DIVISION | AIR TRAFFIC DIVISION |
| ATCT FELTS FIELD SPOKANE WASHINGTON | ATCT BOEING FIELD WASHINGTON |

| 23. Veteran's Preference | | | | 24. Tenure | | 25. Agency Use | 26. Veterans Preference for RIF |
|---|---|---|---|---|---|---|---|
| 2 | 1 - None   3 - 10-Point/Disability   5 - 10-Point/Other | 2 - 5-Point   4 - 10-Point/Compensable   6 - 10-Point/Compensable/30% | | 1 | 0 - None   2 - Conditional   1 - Permanent   3 - Indefinite | | X YES ☐ NO |

| 27. FEGLI | | 28. Annuitant Indicator | | 29. Pay Rate Determinant |
|---|---|---|---|---|
| C0 | BASIC LIFE ONLY | 9 | NOT APPLICABLE | T |

| 30. Retirement Plan | | 31. Service Comp. Date (Leave) | 32 Work Schedule | 33. Part - Time Hours Per Biweekly Pay Period |
|---|---|---|---|---|
| 1 | CSRS | 02-28-78 | F | |

| 34. Position Occupied | | 35. FLSA Category | 36. Appropriations Code | 37. Bargaining Unit Status |
|---|---|---|---|---|
| 2 | Excepted Service | E | SEE REMARKS BELOW | 0061 |

| 38. Duty Station Code | 39. Duty Station (City - County - State or Overseas Location) |
|---|---|
| 53-1960-033 | SEATTLE, KING, WA |

| 40. Agency Data | 41. | 42. | 43. | 44. |
|---|---|---|---|---|
| SPEC PROG= 00 | SUPV CSC= 8 | POS TYPE= 1 | | POSITION SENSITIVITY = MODERATE RISK |

**45. Remarks**
APPROP = 001 .0 /000/120  /2783  /1111
SALARY IN BLOCK 12C INCLUDES A LOCALITY-BASED PAYMENT OF 5.87%. SALARY IN BLOCK 12A IS SPECIAL PAY
RATE UNDER P.L. 104-50. BLOCK 18 IDENTIFIES YOU IN THE ATC COMPENSATION PLAN AS CPC, ATC FACILITY LEVEL
8. SALARY IN BLOCK 20C INCLUDES A LOCALITY-BASED PAYMENT OF 7.96%. EMPLOYEE ELIGIBLE FOR TRUE TIME
AND ONE HALF OVERTIME COMPENSATION. ATC POSITION COVERED BY P.L. 104-50 FOR EARLY RETIREMENT
PURPOSES. CONTINUE DUES WITHHOLDING, IF APPLICABLE. YOUR SALARY WILL BE ADJUSTED BY THE REMAINING 50% UPON CERTIFICATION. CORRECTS
NATURE OF ACTION FROM PROMOTION TO REASSIGNMENT AND CORRECTS SALARY IN BLOCKS 20, 20A, 20B AND 20C.

| 46. Employing Department or Agency | 50. Signature / Authentication and Title of Approving Official |
|---|---|
| DEPARTMENT OF TRANSPORTATION/FAA | |

| 47. Agency Code | 48. Personnel Office ID | 49. Approval Date | AUTHORIZING OFFICIAL |
|---|---|---|---|
| TD - 03 | 3218 | 04-12-02 | |

# EXHIBIT B

Standard Form 52
Rev. 7/91
U.S. Office of Personnel Management
FPM Supp. 296-33, Subch. 3

# REQUEST FOR PERSONNEL ACTION



Actions Requested

**Resignation**

| | | | |
|---|---|---|---|
| Actions Requested | | 2. Request Number | |
| **Resignation** | | | |
| For Additional Information Call (Name and Telephone Number) | | 4. Proposed Effective Date | |
| Pamela S. Burger    206-658-6401 | | 4/5/03 | |
| Action Requested By (Typed Name, Title, Signature, and Request Date) | 6. Action Authorized By (Typed Name, Title, Signature, and Concurrence Date) | | |
| Pamela S. Burger  *Pamela S Burger* | | | |
| Air Traffic Manager, Boeing ATCT  3/28/03 | | | |

| | 2. Social Security Number | 3. Date of Birth | 4. Effective Date |
|---|---|---|---|
| Name (Last, First, Middle) | | | |
| Tracy A. Jenson | | 11/10/57 | 4/5/03 |

| FIRST ACTION | | SECOND ACTION | |
|---|---|---|---|
| 5-A. Code  5-B. Nature of Action | | 6-A. Code  6-B. Nature of Action | |
| **Resignation** | | | |
| 5-C. Code  5-D. Legal Authority | | 6-C. Code  6-D. Legal Authority | |
| 5-E. Code  5-F. Legal Authority | | 6-E. Code  6-F. Legal Authority | |

| 14. FROM: Position Title and Number | | 15. TO: Position Title and Number | |
|---|---|---|---|

| Pay Plan | 9. Occ. Code | 10. Grade or Level | 11. Step or Rate | 12. Total Salary | 13. Pay Basis | 16. Pay Plan | 17. Occ. Code | 18. Grade or Level | 19. Step or Rate | 20. Total Salary/Award | 21. Pay Basis |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 12A. Basic Pay | 12B. Locality Adj. | 12C. Adj. Basic Pay | 12D. Other Pay | | | 20A. Basic Pay | 20B. Locality Adj. | 20C. Adj. Basic Pay | 20D. Other Pay | | |

| 21. Name and Location of Position's Organization | 22. Name and Location of Position's Organization |
|---|---|
| Federal Aviation Administration  Boeing ATCT | |

| EMPLOYEE DATA | | | |
|---|---|---|---|
| 23. Veterans Preference | 24. Tenure | 25. Agency Use | 26. Veterans Preference for RIF |
| 1 – None      3 – 10-Point/Disability    5 – 10-Point/Other<br>2 – 5-Point    4 – 10-Point/Compensable   6 – 10-Point/Compensable/30% | 0 – None      2 – Conditional<br>1 – Permanent   3 – Indefinite | | YES   NO |
| 27. FEGLI | 28. Annuitant Indicator | | 29. Pay Rate Determinant |
| 30. Retirement Plan | 31. Service Comp. Date (Leave) | 32. Work Schedule | 33. Part-Time Hours Per Biweekly Pay Period |

| POSITION DATA | | | |
|---|---|---|---|
| 34. Position Occupied | 35. FLSA Category | 36. Appropriation Code | 37. Bargaining Unit Status |
| 1 – Competitive Service   3 – SES General<br>2 – Excepted Service    4 – SES Career Reserved | E – Exempt<br>N – Nonexempt | | |
| 38. Duty Station Code | 39. Duty Station (City – County – State or Overseas Location) | | |

| 40. Agency Data | 41. | 42. | 43. | 44. |
|---|---|---|---|---|
| 45. Educational Level | 46. Year Degree Attained | 47. Academic Discipline | 48. Functional Class | 49. Citizenship   1 – USA  8 – Other | 50. Veterans Status | 51. Supervisory Status |

| PART B - REVIEWS AND APPROVALS | | | | | |
|---|---|---|---|---|---|
| 1. Office/Function | Initials/Signature | Date | Office/Function | Initials/Signature | Date |
| A. | | | D. | | |
| B. | | | E. | | |
| C. | | | F. | | |
| 2. Approval: I certify that the information entered on this form is accurate and that the proposed action is in compliance with statutory and regulatory requirements. | | | Signature | | Approval Date |

CONTINUED ON REVERSE SIDE
52-119

OVER

Editions Prior to 7/91 Are Not Usable After 6/30/93
NSN 7540-01-333-6239

Note to Supervisors: Do you know of additional or conflicting reasons for the employee's resignation/retirement?   ☐ YES   ☒ NO
(If "YES", please state these facts on a separate sheet and attach to SF 52.)

**Privacy Act Statement**

ou are requested to furnish a specific reason for your resignation or retirement and forwarding address. Your reason may be considered in any future decision regarding our re-employment in the Federal service and may also be used to determine your eligibility for unemployment compensation benefits. Your forwarding address will be used primarily to mail you copies of any documents you should have or any pay or compensation to which you are entitled.

This information is requested under authority of sections 301, 3301, and 8506 of title , U.S. Code. Sections 301 and 3301 authorize OPM and agencies to issue

regulations with regard to employment of individuals in the Federal service and their records, while section 8506 requires agencies to furnish the specific reason for termination of Federal service to the Secretary of Labor or a State agency in connection with administration of unemployment compensation programs.

The furnishing of this information is voluntary; however, failure to provide it may result in your not receiving: (1) your copies of those documents you should have; (2) pay or other compensation due you; and (3) any unemployment compensation benefits to which you may be entitled.

. Reasons for Resignation/Retirement (NOTE: Your reasons are used in determining possible unemployment benefits. Please be specific and avoid generalizations. Your resignation/retirement is effective at the end of the day – midnight – unless you specify otherwise.)

EMPLOYER (FAA) VIOLATION OF PAY REGULATIONS RESULTING IN DISCRIMINATION
AGAINST SMALL GROUP OF EMPLOYEES, INCLUDING ME. TIRED OF FAA'S
"TRACK RECORD" OF DISCRIMINATION HISTORY DURING YEARS OF EMPLOYMENT;
FAA INDIFFERENCE AND BELLIGERENCE IN HANDLING LEGITIMATE DISCRIMINATION
COMPLAINT AND FAA HEADQUARTERS PROVIDING SENATORS OFFICE WITH
FALSE INFORMATION. FAA REFUSAL TO "RIGHT A WRONG". IN THIS PARTICULAR
CASE RESIGNATION IS ALSO NECESSARY TO FILE A CLASS-ACTION LAWSUIT.

| . Effective Date | 3. Your Signature | 4. Date Signed | 5. Forwarding Address (Number, Street, City, State, ZIP Code) |
|---|---|---|---|
| /5/2003 | Tracy A. Jensen | 3/24/03 | P.O. BOX 35 SPIRIT LAKE, ID. 83869 |

# EXHIBIT C



AGREEMENT

between the

NATIONAL AIR TRAFFIC

CONTROLLERS ASSOCIATION

AFL/CIO

and the

FEDERAL AVIATION ADMINISTRATION

DEPARTMENT OF TRANSPORTATION



SEPTEMBER 1998
FEBRUARY 2001
SEPTEMBER 2001

4g

03/19/2007 12:48 FAX 2024935085          AGC30                    ☑ 009/039

Case 1:05-cv-00059-RWR     Document 6-4     Filed 03/19/2007     Page 3 of 4

CHANGE AGREEMENT ................... 163
NAL PROPERTY CLAIMS ................ 163
EFERRAL ........................... 163
NG ................................ 165
BILITY OF THE CENTER FOR
AGEMENT DEVELOPMENT (CMD) ....... 166
RARY DUTY TRAVEL ................. 167
TY ................................ 170
TIONARY EMPLOYEE ................. 170
TIONAL REQUIREMENTS .............. 170
Y CONSIDERATION .................. 171
ORM ............................. 171
OF AGREEMENT .................... 173
IG OF THE AGREEMENT .............. 173
ER ............................... 174
RULES ........................... 174
ON .............................. 174

EEMENT .......................... 177
ERSTANDING ...................... 181

FFIC CONTROLLER UNIT FLRA
ICATION .......................... 189
MANAGEMENT UNIT FLRA
ICATION .......................... 191
UNIT FLRA CERTIFICATION .......... 193

vi

# ARTICLE 1
## PARTIES TO THE AGREEMENT

**Section 1.** This Agreement is made by and between the National Air Traffic Controllers Association AFL–CIO (hereinafter "the Union"), and the Federal Aviation Administration, Department of Transportation (hereinafter "the Employer" or "the Agency"). The Union and the Agency are referred to collectively herein as "the Parties."

**Section 2.** For the purposes of this Agreement, the Parties agree that within the David J. Hurley Air Traffic Control Systems Command Center (ATCSCC) structure, ATT-2 is the equivalent of the Air Traffic Manager and ATT-1 is the equivalent of the regional level/Air Traffic Division Manager.

# ARTICLE 2
## UNION RECOGNITION AND REPRESENTATION

**Section 1.** The Agency hereby recognizes the Union as the exclusive bargaining representative of Air Traffic Control Specialists, FG-2152 series, located in terminal and enroute facilities, as certified by the Federal Labor Relations Authority (FLRA) on June 19, 1987 (Appendix 1). The agency also recognizes the Union as the exclusive bargaining representative of traffic management coordinators/specialists, FG-2152 series, in terminal and enroute facilities and the Air Traffic Control System Command Center (ATCSCC), as certified by the FLRA on May 25, 2000 (Appendix 2), and NOTAM specialists, FG-2152 series, at the ATCSCC, as certified by the FLRA on March 23, 1999 (Appendix 3).

**Section 2.** If the bargaining unit(s) described in Section 1 is/are amended to include other employees, those employees shall be covered by this Agreement.

1

**Section 3.** The Parties shall continue their support of training on problem solving techniques and similar programs which the Parties mutually agree to pursue. The Union and the Employer shall mutually agree on the scope, content, development and arrangements for delivery of any joint problem solving training under this Article.

**Section 4.** Official time, travel and per diem shall be granted to Union representatives to attend jointly agreed upon training/briefings on joint problem solving techniques.

**Section 5.** At the request of either Party, the Parties shall meet in an effort to develop a process of alternative dispute resolution. The Union's representatives shall be on official time, if otherwise in a duty status.

# ARTICLE 9
## GRIEVANCE PROCEDURE

**Section 1.** A grievance shall be defined as any complaint:

**a.** by any employee concerning any matter relating to the employment of the employee;

**b.** by the Union concerning any matter relating to the employment of any unit employee; or

**c.** by a unit employee or either Party concerning any claimed violation, misinterpretation, or misapplication of any law, rule or regulation affecting conditions of employment as provided in the Civil Service Reform Act of 1978 or this Agreement.

The Employer recognizes that employees are entitled to file and seek resolution of grievances under the provisions of the negotiated grievance procedure. The Employer agrees not to interfere with,

19

restrain, coerce, or engage in any reprisal against any employee or Union representative for exercising rights under this Article.

**Section 2.** This procedure provides for the timely consideration of grievances. Except as limited or modified by Sections 3, 4, and/or 5, it shall be the exclusive procedure available to the Parties and the employees in the unit for resolving grievances. Any employee, group of employees or the Parties may file a grievance under this procedure. The Parties shall cooperate to resolve grievances informally at the earliest possible time and at the lowest possible supervisory level. The Parties, consistent with the provisions of this Article, intend that the joint problem solving procedures of Article 8 shall be used to the fullest extent practicable to resolve problems through a proactive approach before resorting to formal dispute resolution procedures.

**Section 3.** This procedure shall not apply to any grievance concerning:

a. any claimed violation of subchapter III of Chapter 73, Title 5 USC (relating to prohibited political activities);

b. retirement, life insurance or health insurance;

c. a suspension or removal under Section 7532, Title 5 USC (relating to national security matters);

d. any examination, certification or appointment (Title 5 USC 7121 (c)(4));

e. the classification of any position which does not result in the reduction-in-grade or pay of any employee;

f. the removal of probationers;

**Section 4.** In matters relating to Title 5 USC 2302(b)(1) dealing with certain discriminatory practices, an aggrieved employee shall

have the option of utilizing this grievance procedure or any other procedure available in law or regulation, but not both.

**Section 5.** The Parties reserve their rights to all applicable statutory appeal procedures.

**Section 6.** Employees are entitled to be assisted by the Union in the presentation of grievances. Any employee or group of employees covered by this procedure may present grievances without the assistance of the exclusive representative, as long as the exclusive representative has been given the opportunity to be present during the grievance proceedings. No other individual(s) may serve as the employee's representative in the processing of a grievance under this procedure, unless designated by the Union. The right of individual presentation does not include the right of taking the matter to arbitration unless the Union agrees to do so.

**Section 7.** In the case of grievances concerning disciplinary/adverse actions, the Union may elect to utilize the procedures of Section 8 or Section 16a. Grievances filed under Section 8 should be submitted beginning with Step 2, rather than Step 1, no later than twenty (20) calendar days after the effective date of the disciplinary/adverse action.

**Section 8.** Grievances filed by employees.

Employees are strongly encouraged to resolve their concerns through the joint problem solving procedures of Article 8 prior to submitting grievances under this Section.

**Step 1.** An aggrieved employee shall request in writing informal resolution of his/her grievance from his/her immediate supervisor (who may be the Air Traffic Manager) within twenty (20) calendar days of the event giving rise to the grievance or within twenty (20) calendar days of the time the employee may have been reasonably expected to have learned of the event. The supervisor shall promptly arrange for a meeting at a mutually

agreeable time, but no later than twenty (20) calendar days following the date of the employee's request to discuss the grievance. The employee and his/her representative will be given a reasonable amount of official time to present the grievance. The supervisor shall answer the grievance in writing within twenty (20) calendar days following the meeting. If the grievance is denied, the reasons for denial will be in this written response. A copy of the decision will be provided to the Union.

**Step 2.** If the employee or the Union is not satisfied with the answer, a formal grievance may be submitted to the Air Traffic Manager or Hub Manager, as appropriate, within twenty (20) calendar days following the receipt of the answer. In those facilities where the Air Traffic Manager is also the supervisor, the Hub Manager shall be the official to hear the grievance at this step. In such cases, the grievance may be processed through the Air Traffic Manager. The grievance shall be submitted in writing on a grievance form and shall contain the name of the grievant, the alleged violation, the corrective action desired, the name of his/her Union representative, and whether he/she wishes to make an oral presentation. Failure to provide all of the information listed above shall result in the grievance being returned for completion. The time limit will continue to run during the period the grievance is returned. If requested, the Air Traffic Manager or Hub Manager, as appropriate, shall, prior to making a decision, afford the employee and/or Union representative an opportunity to present the grievance orally. The employee and his/her representative will be given a reasonable amount of official time to present the grievance. The decision of the Air Traffic Manager or Hub Manager, as appropriate, shall be delivered to the employee and Union representative within twenty (20) calendar days following receipt of the written grievance. In disciplinary/adverse action cases, a decision shall be delivered to the employee within ten (10) calendar days of the date of the grievance. The decision shall be delivered personally

22

to the employee, and/or his/her representative, if he/she is on duty. Otherwise, another appropriate method of delivery shall be used. If the grievance is denied, the reasons for denial will be in the written response.

**Step 3.** If the Union is not satisfied with the decision, the Union may within twenty (20) calendar days following receipt of the decision or the day the answer was due, advise the Manager, Labor Relations Branch, Regional Headquarters, or Air Traffic Labor Management Relations Division (ATX-500) for grievances arising out of the ATCSCC, by certified mail, that it desires the matter be reviewed by the Manager, Air Traffic Division or his/her designee. The Union will be notified by certified mail within twenty (20) calendar days of the regional decision. If the grievance is denied, the reasons for denial will be in the written response. The Union at the national level may, within thirty (30) calendar days following receipt of the regional decision, notify by certified mail the Director, Office of Labor and Employee Relations, with a copy to the Regional Labor Relations Branch Manager, that it desires the matter be submitted to arbitration. Within thirty (30) calendar days after receipt of the request, an arbitrator shall be selected from the panel by the Parties or by alternately striking names until one (1) remains or as otherwise mutually agreed. At least once quarterly, and more often if mutually agreed to, the Union's Regional Vice President, his/her designee, the Manager, Air Traffic Division, and the Manager, Labor Relations Branch, or their designees, shall meet to discuss and attempt to resolve grievances pending at Section 8, Step 3 or Section 11, Step 2 of this procedure. The Union representative(s) shall be on official time if otherwise in a duty status, including travel time. Travel and per diem expenses for the Regional Vice President or his/her designee will be authorized for one (1) meeting per quarter, under this Article.

**Section 9.** The Parties shall create a panel of three (3) mutually acceptable arbitrators in each FAA Region. Either Party may

23

unilaterally remove an arbitrator from the panel and another arbitrator shall be mutually selected to fill the vacancy. Arbitrators selected for panels must also agree to hear expedited arbitration cases as provided in Section 16.

**Section 10.** The grievance shall be heard by the arbitrator as promptly as practicable on a date and at a site mutually agreeable to the Parties. The Union advocate, if an employee of the FAA, shall be granted eight (8) hours of official time for preparation for the hearing. Additional release time may be granted, unless prohibited by operational requirements. Such time may be annual leave, earned compensatory time, leave without pay, or combination thereof. The grievant and/or the Union advocate, shall be given a reasonable amount of official time to present the grievance. FAA employees who are called as witnesses shall be in a duty status, if otherwise in a duty status. The Employer agrees to adjust the schedules of witnesses, to allow them to appear in a duty status. The Parties will exchange lists of potential witnesses to an arbitration hearing five (5) days prior to the scheduled hearing. Each Party shall bear the expense of its own witnesses who are not employed by the FAA, or who are not located at that duty location where the grievance arose. The Employer agrees to make every reasonable effort to produce witnesses requested by the Union. The arbitrator shall submit his/her report to the Air Traffic Manager, the aggrieved employee and/or the Union representative, as soon as possible, but in no event later than thirty (30) calendar days following the close of the record before him/her unless the Parties waive this requirement. The decision of the arbitrator is final and binding. If the Union elects to submit a post hearing brief, the Union's case advocate, if an employee of the FAA, will be granted up to sixteen (16) hours of release time to prepare the post hearing briefs unless prohibited by operational requirements. Such time will be annual leave, earned compensatory time, leave without pay, or any combination thereof.

24

Additional release time may be granted, unless prohibited by operational requirements.

**Section 11.** Grievances filed by the Union or Employer, The Parties agree to use the joint problem solving procedures in Article 8 to the fullest extent practicable to resolve disputes prior to submitting grievances under this Section.

**Step 1.** In the case of any grievance which the Union at the facility, regional or national level may have against the Employer at the corresponding level, or which the Employer at the facility, regional or national level may have against the Union at the corresponding level, the moving Party shall at that level submit the grievance to the other Party in writing within twenty (20) calendar days of the event giving rise to the grievance or within twenty (20) calendar days of the time the moving Party may have been reasonably expected to have learned of the event and shall provide the following information:

a. The facts upon which the grievance is based.

b. The corrective action sought.

c. If an oral presentation is requested.

**Step 2.** The responding Party shall answer the grievance in writing within twenty (20) calendar days following the date the grievance was received. If the moving Party is not satisfied with the answer, the matter may be referred to the respondent at the regional level, if appropriate, within twenty (20) calendar days following the receipt of the respondent's answer or the date the answer was due for review and resolution. The responding Party shall answer the grievance in writing within twenty (20) calendar days following the date the grievance was received. If the moving Party desires the matter to be submitted to arbitration, they shall, at the national level, so advise the respondent at the national level by certified mail within thirty (30) calendar days

25

following the receipt of the respondent's answer or the date the answer was due.

The Parties will create a national panel of three (3) mutually acceptable arbitrators. Each Party may unilaterally remove an arbitrator from the panel and another arbitrator shall be mutually selected to fill the vacancy. Within seven (7) calendar days after receipt of the request, an arbitrator shall be selected from the panel by the Parties or by alternately striking names until one (1) remains or as otherwise mutually agreed.

**Step 3.** The grievance hearing shall be conducted by the arbitrator as promptly as practicable on a date and at a site mutually agreeable to the Parties. Each Party shall bear the expenses of its own witnesses. The arbitrator shall submit his/her report to the Parties as soon as possible, but in no event later than thirty (30) calendar days following the close of the record before him/her unless the Parties waive this requirement. The decision of the arbitrator is final and binding.

**Section 12.** The arbitrator's fees and expenses of arbitration incurred under this procedure shall be borne equally by the Parties. The Parties must mutually agree to any postponement or cancellation of any scheduled arbitration hearing. If a verbatim transcript of the hearing is made and either Party desires a copy of the transcript, that Party will bear the expense of the copy or copies they obtain. The Parties will share equally the cost of the transcript, if any, supplied to the arbitrator.

**Section 13.** The arbitrator shall confine himself/herself to the precise issue submitted for arbitration and shall have no authority to determine any other issues not submitted to him/her.

**Section 14.** Failure of a grievant to proceed with a grievance within any of the time limits specified in this procedure shall render the grievance void or settled on the basis of the last decision given by the Employer, unless an extension of time limits has been agreed

26

Failure of the Employer to render a decision within any time limits specified in this procedure shall entitle the grievant to process the grievance to the next step without a decision.

**Section 15.** The Parties retain their rights under Title 5 USC 7122 or 7123.

**Section 16. Expedited arbitrations:**

a.  If the Union at the national level elects to process a disciplinary/adverse action under this Section, rather than Section 8, it shall within twenty (20) calendar days following the effective date of the disciplinary/adverse action, notify the Regional Labor Relations Branch or ATX-500 for grievances arising out of the ATCSCC, of its intent to proceed under this Section and advise the Director, Office of Labor and Employee Relations, that it desires the matter be submitted directly to expedited arbitration. Within seven (7) calendar days after receipt of the request, an arbitrator shall be selected from the national or regional panel by the Parties or by alternately striking names until one (1) remains. An arbitrator unable to hear an expedited arbitration case within seven (7) calendar days shall be deemed unavailable and the next arbitrator in turn will be selected. The hearing shall be conducted as soon as possible. The arbitrator shall issue a decision as soon as possible, but no later than twenty-one (21) calendar days after the hearing has been held. The necessity for transcripts or filing of briefs shall be determined on a case-by-case basis. The election of either Party to request a transcript and/or file a post hearing brief shall not delay the time frame for the arbitrator to render his/her decision.

b.  In cases other than disciplinary/adverse actions, either Party at the national level may refer a particular grievance to expedited arbitration in lieu of the normal arbitration process

27

in this procedure. The Parties shall meet and select an arbitrator from the national or regional panel or by alternately striking names.

The hearing shall be conducted as soon as possible and shall be informal in nature. There shall be no briefs, no official transcripts, no formal rules of evidence, and the arbitrator shall issue a decision as soon as possible, but no later than five (5) calendar days after the official closing of the hearing unless otherwise agreed between the Parties. Determinations as to whether expedited arbitration shall be utilized in cases other than disciplinary/adverse actions shall be based on the facts and circumstances of each case; however, only those grievances where the passage of time would preclude a remedy or result in irreparable harm are subject to this expedited procedure. Disagreements as to whether a grievance is appropriate for this expedited procedure shall be referred to the arbitrator for decision.

**Section 17.** The Parties may, by mutual agreement, stipulate the facts and the issue in a particular case directly to an arbitrator for decision without a formal hearing. Argument will be by written brief.

**Section 18.** Questions as to whether or not a grievance is on a matter subject to the grievance procedure in this Agreement or is subject to arbitration shall be submitted to the arbitrator for decision.

**Section 19.** In the handling of grievances under this procedure and where law and OPM regulations permit, the Union shall have access to such information as is relevant and necessary to the processing of the grievance.

**Section 20.** At the request of either Party, the Parties shall meet in an effort to develop an accelerated arbitration process. The Union's representatives shall be on official time if otherwise in a duty status.

28

# EXHIBIT D

# MEMORANDUM OF UNDERSTANDING
## WITH RESPECT TO RECLASSIFICATION AND ASSOCIATED PAY RULES
### BETWEEN THE
### NATIONAL AIR TRAFFIC CONTROLLERS ASSOCIATION
### AND THE
### FEDERAL AVIATION ADMINISTRATION

This agreement is made and entered into by the National Air Traffic Controllers Association (NATCA) and the Federal Aviation Administration (Agency) in the matters of controller pay definitions, applications, and policies, in association with the ATC Facility Reclassification project.

This Memorandum of Understanding shall be read in conjunction with the Principal Memorandum of Agreement dated July _9_, 1998.

The parties agree that any new pay/reclassification issues that surface subsequent to the signing of this agreement will be mutually addressed and resolved.

This agreement between the National Air traffic Controllers' Association and the Federal Aviation Administration is approved this 8th day of JULY 1998.


Raymond B. Thoman
Program Director, Labor and Employee Relations
Federal Aviation Administration


Mike McNally
President
National Air traffic Controllers' Association, AFL-CIO


Exhibit 13
Page 1

**32. Developmental Air Traffic Controller Training Stages.** Each terminal and enroute air traffic control facility shall contain from two to four training stages for Developmental Air Traffic Controllers dependent on the complexity and number of operating positions within the facility.

**Note - a work group will be assembled and tasked with identifying the specific training stages necessary for each category of ATC facility by ATC level.**

**33. Pay Retention** applies to eligible employees whose base pay exceeds the applicable pay band. When an employee is in retained pay status, he/she shall receive ½ of the OSI increase for which eligible until such time that the employee's base pay falls within the facility level pay band. The retained base pay shall be the basis for calculating all differentials, retirement and pay benefits. An employee in retained pay status shall receive any SCI increase for which he/she is eligible in a lump sum payment.

**34. ATC Facility Level Retention.** If an employee is assigned to a facility that is reclassified to a lower ATC level, base pay will be retained at the higher ATC level (including all OSI and SCI increases for which the employee is eligible) for two (2) years, beginning the first full pay period after the action is taken. After two (2) years the employee's current base pay will be placed in the lower ATC facility level pay band. If the employee's current base pay exceeds the top of the new level pay band, the employee shall be in pay retention status. If during the two (2) year period the facility is reclassified to its original ATC facility level, there will be no change in the employee's base pay.

**Note - a voluntary transfer out of the facility during the two (2) year period negates ATC Facility Level Retention. Eligibility for ATC Facility Level Retention is based solely on the employee's position of record at the time of the reclassification of the facility.**

**35. CPC Conversion from the FG Pay Schedules to the ATC Pay Levels.** Effective October 1, 1998, the following steps will be taken to transition bargaining unit employees to the ATC pay system. It is understood that the pay targets established under these rules will not be changed unless required to accommodate distribution of the $200 million dollars as specified in paragraph 5 of the Principal MOA.

Step 1:  Establish the percentage difference between each employee's current FG grade and step above the current FG grade step1 for their assigned facility (including locality).

Step 2:  Multiply the minimum base pay of the assigned ATC level pay band by that percentage. Add that figure to the minimum of the pay band to establish each employees target base pay. If the employee's target base pay does not exceed their current base pay by a minimum of 9.1%, the employee's target base pay will be adjusted upward to meet this minimum.

Each employee's target base pay will be transitioned in three phases to reach the target base pay.

Exhibit 13
Page 6

6

Year 1: Determine the first transitional base pay for each employee by:

a. Add 4.1% (ATRA) to each employee's base pay (FG grade, step plus locality);
b. Add any applicable IIP and/or Pay Demonstration entitlement; then,
c. Subtract the transition base pay from the target base pay to determine the amount of increase in base pay to be apportioned over the three years of the transition. Determine the amount to be apportioned in each year by the following approximate percentages: Year 1    %, Year 2    %, Year 3    % (totaling 100%). Add the year one increment to the transition pay base to determine the year one base pay; and,
d. Add (a), (b) and (c) to determine the first transitional base pay, retroactive to October 1, 1998.

Year 2: Add the identified dollar amount (Year 1(c)) to employee's base pay in the first full pay period of fiscal year 2000.

Year 3: Add the identified dollar amount (Year 1(c)) to employee's base pay in the first full pay period of fiscal year 2001.

Appendix 1 of this MOU contains the pay table for this reclassification system.

Note: The dollar amount of increase determined by year 1 (step c) above is a fixed dollar amount that will not change even if the employee transfers to a higher, lower or same ATC level facility during the transition to the target base pay period (3 years).

Note: Facilities currently classified as Level 1, and that are scheduled to be contracted out by end of fiscal year 1998, will not be classified within the new ATC levels. Those facilities will be treated in accordance with current pay policies with the exception that their base pay will be increased by 5% in the first year.

36. Developmental Air Traffic Controllers Conversion from the FG Pay Schedules to the ATC Pay Levels. Upon transition from the FG pay system to the new ATC pay system, Developmental Air Traffic Controllers will receive the same percentage increase received by the step one FPL/CPC in the facility upon conversion. This figure will not exceed the total dollar increase received by the step one FPL/CPC. At this point the Developmental Air Traffic Controllers also merge into the defined facility training (stage) program and receive subsequent pay increases according to completion of these training stages.

37. OSI Distribution. Bargaining unit employees will receive a portion of the annual OSI increase to base pay effective the first full pay period in January of each fiscal year unless negotiated otherwise. All ATC bargaining unit employees base pay shall be adjusted upward by the greater amount of the following:

Exhibit 3
Page 7

COMPLAINANTS0013A_0008

# EXHIBIT E

# Memorandum Of Understanding
## With Respect To Reclassification And Associated Pay Rules Between The
## National Air Traffic Controllers Association
## And The
## Federal Aviation Administration

This agreement is made and entered into by the National Air Traffic Controllers Association (NATCA) and the Federal Aviation Administration (Agency) in matters of controller pay definitions, applications, and policies, in association with the ATC Facility Reclassification project.

This Memorandum of Understanding shall be read in conjunction with the Memorandum Of Understanding With Respect To Reclassification And Associated Pay Rules Between The National Air Traffic Controllers Association And The Federal Aviation Administration dated July 8th, 1998.

This Agreement is jointly developed to clarify the party's intent of paragraph 51 of the Memorandum of Understanding with Respect to Reclassification and Associated Pay Rules between the National Air Traffic Controllers Association and the Federal Aviation Administration dated July 8, 1998. This agreement applies to bargaining unit employees within those facilities classified as Level I towers under the previous classification system and that are presently scheduled to be contracted out. The parties agree the intent of reassigning these Level I controllers from the FG system to the ATC system as a result of contracting out will be processed in accordance with paragraph 51, Transfer to a higher level facility.

This agreement between the National Air Traffic Controllers' Association and the Federal Aviation Administration is approved this 27th day of April 1999.

Mike McNally
President National Air Traffic Controllers Association

Ronald E. Morgan
Director of Air Traffic, Federal Aviation Administration

98-144

# EXHIBIT F

03/19/2007 12:50 FAX 2024935085    AGC30    017/039

SENT BY: FAA   Case 1:07-cv-00359-RWR   Document 6-7   Filed 03/19/2007   Page 2 of 5   PAGE 13

JUN. 3.2003   5:01PM   DOT OFC CIVIL RIGHTS   NO. 321   P. 13



## APPEAL FORM
### INSTRUCTIONS

**GENERAL:** You do not have to use this form to file an appeal with the Board. However, if you do not, your appeal must still comply with the Board's regulations. See 5 C.F.R. Parts 1201, 1208, and 1209. Your agency's personnel office will give you access to the regulations, and the Board will expect you to be familiar with them. You also should become familiar with the Board's key case law and controlling court decisions as they may affect your case. Complete Parts I, II, III and V of this form regardless of the kind of action you are appealing. Complete Part VI only if you are appealing an action resulting from a reduction in force. You must tell the Board if you are raising an affirmative defense (see Part IV), and you are responsible for proving each defense you raise. If you believe the action you are appealing was wrongและ prepared, taken, or not taken because of whistleblowing activities, you must complete Part VII. If you are requesting a stay, you must complete Part VIII. If you claim a violation of your rights under the Uniformed Services Employment and Reemployment Rights Act (USERRA) or the Veterans Employment Opportunities Act (VEOA), you must provide the information required by the Board's regulations at 5 C.F.R. 1208.13 (for USERRA appeals) or 5 C.F.R. 1208.22 (for VEOA appeals). You may use a separate sheet of paper (please put your name and address at the top of each additional page) or you may include the information in block 31 of Part IV.

**WHERE TO FILE AN APPEAL:** You must file your appeal with the Board's regional or field office which has responsibility for the geographic area where your duty station was located when the agency took the action or, if you are appealing a retirement or suitability decision, the geographic area where you live. See 5 C.F.R. Part 1201, Appendix II and 5 C.F.R. 1201.4(d).

**WHEN TO FILE AN APPEAL:** Unless your appeal is covered by a law that sets a different filing time limit, your appeal must be filed during the period beginning when you get any after the effective date, if any, of the action you are appealing and ending on the 30th day after

the effective date, or within 30 days after the date you receive the agency's decision, whichever is later. However, if you and the agency mutually agree in writing to try to resolve your dispute through an alternative dispute resolution process before you file an appeal, you have an additional 30 days—for a total of 60 days—to file your appeal. You may not file your appeal before the effective date of the action you are appealing. If your appeal is late, it may be dismissed as untimely. If you are filing a USERRA appeal, there is no time limit for filing. (see 5 C.F.R. 1208.12). You may not file a VEOA appeal with the Board unless you first filed a complaint with the Secretary of Labor and allowed the Secretary at least 60 days to try to resolve the matter; any subsequent appeal to the Board must be filed within 15 days of the date you receive notice that the Secretary has been unable to resolve the matter (see 5 C.F.R. 1208.22). If you are filing a whistleblower appeal after first filing a complaint with the Office of Special Counsel (OSC), your appeal must be filed within 65 days of the date of the OSC notice advising you that the Special Counsel will not seek corrective action or within 60 days after the date you receive the OSC notice, whichever is later (see 5 C.F.R. 1209.5). The date of filing is the date your appeal is postmarked, the date of the facsimile transmission, the date it is delivered to a commercial overnight delivery service, or the date of receipt if you personally deliver it to the regional or field office.

**HOW TO FILE AN APPEAL:** You may file your appeal by mail, by facsimile, by commercial overnight delivery, or by personal delivery. You must submit two copies of both your appeal and all attachments. You may supplement your response to any question on a separate sheet of paper, but if you do, please put your name and address at the top of each additional page. All of your submissions must be legible and on 8 1/2" x 11" paper. Your appeal must contain your or your representative's signature in block 6. If a document, your appeal will be rejected and returned to you. If your representative signs block 6, you must sign block 11 or submit a separate written designation of representation.

| 1. Name (last, first, middle initial) | 2. Social Security Number |
|---|---|
| JENSON, TRACY A. | |

| 3. Present address (number and street, city, state, and ZIP code). You must notify the Board of any change of address or telephone number while the appeal is pending with MSPB. | 4. Home phone (include area code) |
|---|---|
| P.O. BOX 35 SPIRIT LAKE, ID. 83869 | (208) 623-3430 |
| | 5. Office phone (include area code) |
| | (253) 221-2608 |

| 6. I certify that all of the statements made in this appeal are true, complete, and correct to the best of my knowledge and belief. | Signature of appellant or designated representative | Date signed |
|---|---|---|
| | *Tracy A. Jenson* | May 5, 2003 |

FROM : C.R. JENSON    PHONE NO. : 208 623 2217    May. 06 2003 12:54PM P1

**7.** You may represent yourself in this appeal or you may choose someone to represent you. Your representative does not have to be an attorney. You may change your designation of a representative at a later date, if you so desire, but you must notify the Board promptly of any change. Where circumstances require, a separate designation of representative may be obtained after the original filing. Include the information requested in blocks 7 through 11.

"I hereby designate _____ to serve as my representative during the course of this appeal. I understand that my representative is authorized to act on my behalf. In addition, I specifically delegate to my representative the authority to settle this appeal on my behalf. I understand that any limitation on this settlement authority must be filed in writing with the Board."

| 8. Representative's address (number and street, city, state, and ZIP code) | 9. Representative's employer |
| | 10.a) Representative's telephone number (include area code) |
| | 10.b) Representative's facsimile number |
| | 11. Appellant's signature _____ Date _____ |

**12.** Briefly describe the agency action you wish to appeal and attach the proposal letter and decision letter. If you are appealing a decision relating to the denial of retirement benefits, attach a copy of OPM's reconsideration decision. If the relevant SF-50 or its equivalent is available, send it now; however, do NOT delay filing your appeal because of it. You may submit the SF-50 when it becomes available. Later in the proceeding, you will be afforded an opportunity to submit detailed evidence in support of your appeal.

APPLICATION OF "RULE 31" FROM THE NEW AIR TRAFFIC PAY SYSTEM TO EMPLOYEES WHO WERE STILL "GS" EMPLOYEES. THESE EMPLOYEES SHOULD HAVE BEEN TRANSFERRED TO THE NEW FACILITIES UNDER THE "GS" PAY RULES AND THEN CONVERTED INTO THE NEW PAY SYSTEM USING "RULE 35."

| 13. Name and address of the agency that took the action you are appealing (including bureau or other divisions, as well as street address, city, state and ZIP code) | 14. Your position title and duty station at the time of the action appealed |
| FEDERAL AVIATION ADMINISTRATION HEADQUARTERS, WASHINGTON D.C. | AIR TRAFFIC CONTROLLER BOEING FIELD, SEATTLE |

| 15. Grade at time of the action appealed | 16. Salary at the time of the action appealed | 17. Are you a veteran and/or entitled to the employment rights of a veteran? |
| ATC-8 BOTTOM OF PAY BAND | $ 74,800 per YEAR | ☒ Yes ☐ No |

| 18. Employment status at the time of the action appealed | 19. If retired, date of retirement (month, day, year) | 20. Type of service |
| ☐ Temporary ☐ Applicants ☐ Reserved | | ☐ Competitive ☐ SES |
| ☒ Permanent ☐ Term ☐ Seasonal | | ☐ Excepted ☐ Postal Service ☐ Foreign Service |

| 21. Length of government service | 22. Length of service with acting agency | 23. Were you serving a probationary or trial period at the time of the action appealed? |
| 25 YEARS | 21 YEARS | ☐ Yes ☒ No |

| 24. Date you received written notice of the proposed action (month, day, year) (attach a copy) | 25. Date you received the final decision notice (month, day, year) (attach a copy) | 26. Effective date of the action appealed (month, day, year) |
| N/A (NOT APPLICABLE) | NOT APPLICABLE | EVERY TWO WEEKS PAY STARTING 11/1/99 LOSS OF PAY OCCURS EVERY TWO WEEKS, |

**29.** Explain briefly why you think the agency was wrong in taking this action.

FAA APPLIED A RULE FROM NEW PAY SYSTEM TO EMPLOYEES WHO WERE STILL UNDER OLD (GS) PAY SYSTEM. AFFECTED EMPLOYEES WERE DISCRIMINATED AGAINST BECAUSE OF THIS PREMATURE APPLICATION.

| 28. Do you believe the penalty imposed by the agency was too harsh? | 29. What action would you like the Board to take on this case (i.e., what remedy are you asking for)? |
|---|---|
| ☒ Yes   ☐ No | MAKE FAA COMPLY WITH PAY REGULATIONS AND REMOVE DISCRIMINATION. |

**30.a)** Do you believe the agency committed harmful procedural error(s)?
☒ Yes   ☐ No

**30.b)** If so, what is (are) the error(s)?
FAA USED "RULE 51" INSTEAD OF "RULE 35" TO THE DETRIMENT TO EMPLOYEES. UNION PRESIDENT AGREED SO HE WOULD GET HIGHER PAY RAISE - CONFLICT OF INTEREST

**30.c)** Explain how you were harmed by the error(s).
OTHER IDENTICAL EMPLOYEES ARE GETTING $23,000 PER YEAR MORE THAN ME. 3 GS-10, STEP 10'S, ARE NEAR (TOP) OF NEW PAY BAND. I WAS GS 10, STEP 10 ALSO AND AM AT (BOTTOM) OF NEW PAY BAND.

**Block 31** - Violations of Law: If you use this block to claim a violation of your rights under USERRA or VEOA, you must include the information required by the Board's regulations at 5 C.F.R. 1208.13 (for USERRA appeals) or 5 C.F.R. 1208.23 (for VEOA appeals). DO NOT use this block to claim a violation of the Whistleblower Protection Act; instead, complete Part VIII and, if you are also requesting a stay, Part VIII.

**31.a)** Do you believe that the action you are appealing violated the law?
☒ Yes   ☐ No

**31.b)** If so, what law?
GS PAY REGULATIONS, AND NON-COMPLIANCE WITH NEW PAY REGULATIONS CAUSING EMPLOYEES TO LOSE PAY STEPS EARNED OVER SEVERAL YEARS

**31.c)** How was it violated?
FAA DID NOT COMPLY WITH GS PAY REGULATIONS WHEN TRANSFERRING EMPLOYEES TO NEW FACILITIES. UNION PRESIDENT AGREED WITH BYPASSING REGULATIONS SO HE WOULD GET HIGHER RAISE (FIXED AMOUNT OF MONEY)

**32.a)** If you believe you were discriminated against by the agency, in connection with the matter appealed, because of your race, color, religion, sex, national origin, marital status, political affiliation, disability, or age, indicate so and explain why you believe it to be true.
NO. THIS HAPPENED TO APPROX. 150 EMPLOYEES WHO WERE SINGLED OUT BY THE FAA, BUT NOT DUE TO ANY OF THE ABOVE FACTORS. 75% OF IDENTICAL EMPLOYEES (APPROX. 450) WERE TREATED ONE WAY, AND THE OTHER 25% (150) WERE TREATED DIFFERENTLY

**32.b)** Have you filed a formal discrimination complaint with your agency or any other agency concerning the matter which you are seeking to appeal?
☐ Yes (attach a copy)   ☐ No

**32.c)** If yes, please filed (agency, number and street, city, state, and ZIP code)

**32.d)** Date filed (month, day, year)

**32.e)** Has a decision been issued?
☐ Yes (attach a copy)   ☐ No

33.a) Have you, or anyone in your behalf, filed a formal grievance with your agency concerning this matter, under a negotiated grievance procedure provided by a collective bargaining agreement?

☑ Yes (attach a copy)   ☐ No

33.b) Date filed (month, day, year)

UNKNOWN

33.c) If yes, please filed (agency, number and street, city, state, and ZIP code)

OTHER CONTROLLERS FILED GRIEVANCES,
BUT UNION REFUSES TO HELP SINCE UNION
AGREED TO THE MISAPPLICATION OF PAY
RULES FOR UNION REPRESENTATIVES BENEFITS

33.d) Has a decision been (issued)?
☐ Yes (attach a copy)   ☐ No

33.e) If yes, date issued (month, day, year)
UNKNOWN

34. You may have a right to a hearing on this appeal. If you do not want a hearing, the Board will make its decision on the basis of the documents you and the agency submit, after providing you and the agency with an opportunity to submit additional documents.

Do you want a hearing?   ☑ Yes   ☐ No

THE ONLY WAY TO EXPLAIN ALL THE
DETAILS AND CORRUPTION IN THE
UNION IS TO HAVE A HEARING, WE

If you choose to have a hearing, the Board will notify you where and when it is to be held. CAN PROVE EMPLOYEES
HAVE BEEN WRONGED.

## INSTRUCTIONS

Fill out this part only if you are appealing from a Reduction in Force. Your agency's personnel office can furnish you with most of the information requested below.

36. Retention group and sub-group

36. Service computation date

37. a) Was your agency offered you another position rather than separating you?
☐ Yes   ☐ No

37. b) Title of position offered

37. c) Grade of position offered

37. d) Salary of position offered
$ _____ per _____

37. e) Location of position offered

37. f) Did you accept this position?
☐ Yes   ☐ No

38. Explain why you think you should not have been affected by the Reduction in Force. (Explanations could include: you were placed in the wrong retention group or sub-group; an error was made in the computation of your service computation date; competitive area was too narrow; improperly reached for separation from competitive level; an exception was made by the regular order of selection; the required number of days notice was not given; you believe you have assignment (bump or retreat) rights; or any other reason. Please provide as much information as possible regarding such reason.)

RECEIVED NSPA
2003 MAY 15 PM 4:27
NERO

# EXHIBIT G

103 LRP 34769

## TRACY A. JENSON, Appellant, v. DEPARTMENT OF TRANSPORTATION, Agency.

### U.S. Merit Systems Protection Board, Northeastern Regional Office

SE-3443-03-0268-I-1

### July 29, 2003

### Judge / Administrative Officer

Wilhelmina Douglas Stevenson

## Full Text

APPEARANCES:

Tracy A. Jenson, Spirit Lake, Idaho, pro se.

Alexander R. Ramirez, Esquire, Washington, D.C., for the agency.

BEFORE

Wilhelmina Douglas Stevenson, Administrative Judge

### Initial Decision

On May 6, 2003, Tracy A. Jenson, an Air Traffic Control Specialist, filed an appeal alleging that the Department of Transportation, Federal Aviation Administration (FAA), Headquarters, Washington, D.C., wrongly applied "Rule 51" from the new air traffic pay system to employees who were still "GS". He contended that the employees should have been transferred to the new facilities under the "GS" pay rules and then converted into the new pay system using "Rule 35". For the reasons set forth below, the appeal is DISMISSED for lack of jurisdiction.

### Jurisdiction

The jurisdiction of the Merit Systems Protection Board (Board) is not plenary because it is limited to those areas specifically granted by law, rule, or regulation. 5 U.S.C. § 7701(a); *Cowan v. United States*, 710 F.2d 803, 805 (Fed. Cir. 1983). And, it is the appellant who has the burden of proving by preponderant evidence[1] that the matter he seeks to appeal is within the Board's appellate jurisdiction. 5 C.F.R. § 1201.56(a)(2)(i)(2003).

By Order dated May 16, 2003, I advised the appellant that it appeared that the matters he raised were not within the Board's jurisdiction. *See* Appeal File (AF), Tab 3. In his response dated June 2, 2003, the appellant argued that he was challenging his reassignment to another position and the simultaneous conversion into the new pay systems with the loss of grade and loss of pay due to the FAA's non-compliance with pay regulations. *Id.* at Tabs 4 and 9. The appellant argued that during the 1980's he was a GS-11 for several years and he reached the GS-11, Step 6 in pay as an Air Traffic Controller. When he recently transferred to another GS-11 facility, he did not receive credit for the steps that he earned as a GS-11, while other controllers at the same facility were given credit for their GS-11 and the steps they had achieved. *Id.* The appellant contends that he was placed at the bottom of the pay band, getting paid the same as a new hire person. He concluded that he has lost grade and pay in the approximate amount of $23,000 per year. *Id.*

According to the agency, Congress in 1995 authorized the Administrator of the FAA to develop and implement no later than January 1996, a personnel management system for the FAA. *Id.* at Tab 7. As a result, the agency was authorized to create a new compensation system for the entire FAA that could have specialized pay plans tailored to the individual needs of the specific lines of business within the FAA. In the spring of 1998, the National Air Traffic Controllers Association (NATCA), a union representing all bargaining-unit air traffic controller specialists in enroute and terminal facilities, and the FAA agreed to the creation of a new Air Traffic Control pay plan for all bargaining unit controllers. The appellant is under the terms of this agreement. *Id.*

The agency showed that in 1998, it processed a personnel action for the appellant in which his base pay increased from $43,919 to $47,261, representing a 9.1% increase. *Id.* at Sublab 4o. On October 24,

1999, the appellant was promoted from Felts Field in Spokane, Washington to a position in the AT pay plan. In accordance with the collective bargaining agreement and memorandum of understanding, the appellant received half of the difference between his old base salary and the minimum of the pay band. The appellant resigned on April 5, 2003, and at that time his salary represented a 54.5% increase from his September 30, 1998 salary. *Id.* Thus, the agency argued that the appellant's challenge to his reassignment to another position without loss of grade or pay is not an adverse action within the Board's jurisdiction.

In order to constitute an adverse action, the appellant must establish that there has been a reduction in grade or pay. Clearly, for the reasons set forth above, the appellant suffered no reduction in pay as a result of the agency's action. On the contrary, the appellant received an increase in pay.

As to the issue of whether the appellant suffered a reduction in grade, I note that "grade" is defined as "a level of classification under a position classification system." 5 U.S.C. § 7511(a)(3). And, there is no basis for concluding that the appellant's level of classification has been reduced. The action at issue clearly resulted from the agency's creation of a new classification and pay system for its employees. And, such matters are not appealable to the Board. *Saunders v. Merit Systems Protection Board,* 757 F.2d 1288, 1290 (Fed. Cir. 1985); *Wilcox v. Arms Control & Disarmament Agency,* 6 M.S.P.R. 310, 311-12 (1981). Since the appellant has not shown that he has been reduced in pay or grade, I find that the Board lacks jurisdiction over these matters raised by the appellant. *Broderick v. Department of Treasury,* 52 M.S.P.R. 254 (1992); *Lake v. U.S. Postal Service,* 40 M.S.P.R. 26 (1989);

Effective April 5, 2003, the appellant resigned from the agency. The appellant stated that his resignation was tantamount to a wrongful termination and he was forced to resign in order to take the FAA to federal court to correct the agency's wrong doing. AF Tab 9. The appellant indicated that he decided to use a portion of his retirement fund in order to pay for the lawsuit that he and the other controllers anticipate filing against the agency. Thus, the only way he was able to get the retirement fund was to resign from the FAA. *Id.*

An employee-initiated action, such as a resignation, is presumed to be voluntary, and voluntary actions are not appealable to the Board. *Covington v. Department of Health and Human Services,* 750 F.2d 937, 941 (Fed. Cir. 1984); *Blaske v. Department of the Army,* 76 M.S.P.R. 164, 167 (1997), *aff'd,* 168 F. 3d 1322 (Fed. Cir. 1998)(Table); 5 C.F.R. § 752.401(b)(9)(2003). An involuntary or coerced resignation, however, is tantamount to a removal and is subject to the Board's jurisdiction. *See Schultz v. United States Navy,* 810 F. 2d 1133, 1136 (Fed. Cir. 1987).

The appellant bears the burden of proving by a preponderance of the evidence that his resignation was involuntary and that the Board has jurisdiction over his appeal. 5 C.F.R. § 1201.56(a)(2)(i)(2003). There is no evidence that the appellant was effectively deprived of free choice in deciding to resign. *McCray v. Department of the Navy,* 80 M.S.P.R. 154 (1998). On the contrary, I find that the record shows that the appellant contemplated his actions prior to the time that he submitted his resignation. Moreover, the appellant has not shown by a preponderance of the evidence that the circumstances permitted no other alternative or were the result of coercive acts of the agency.

Considering the totality of the circumstances in this appeal, I find that the appellant has not proven by preponderant evidence that his resignation was involuntary. Since the appellant voluntarily resigned, I find the Board lacks jurisdiction over his appeal. Thus, for all of the reasons set forth here, the appeal must be DISMISSED for lack of jurisdiction..

## Decision

The appeal is DISMISSED.

[1]A preponderance of the evidence is that degree of relevant evidence that a reasonable person,

---

considering the record as a whole, would accept as
sufficient to find that a contested fact is more likely to
be true than untrue. 5 C.F.R. § 1201.56(c)(2)(2003).

# EXHIBIT H

104 LRP 26034

**TRACY A. JENSON, Appellant, v. DEPARTMENT OF TRANSPORTATION, Agency.**

**U.S. Merit Systems Protection Board**

SE-3443-03-0268-I-1

**May 26, 2004**

**Judge / Administrative Officer**

Neil A. G. McPhie

## Full Text

APPEARANCES:

M. Scott Young, Esquire, Cincinnati, Ohio, for the appellant.

Alexandra R. Ramirez, Esquire, Washington, D.C., for the agency.

Before

Neil A. G. McPhie, Acting Chairman, Susanne T. Marshall, Member

### Final Order

The appellant has filed a petition for review in this case asking us to reconsider the initial decision issued by the administrative judge. We grant petitions such as this one only when significant new evidence is presented to us that was not available for consideration earlier or when the administrative judge made an error interpreting a law or regulation. The regulation that establishes this standard of review is found in Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115).

After fully considering the filings in this appeal, we conclude that there is no new, previously unavailable, evidence and that the administrative judge made no error in law or regulation that affects the outcome. 5 C.F.R. § 1201.115(d). Therefore, we DENY the petition for review. The initial decision of the administrative judge is final. This is the Board's final decision in this matter. 5 C.F.R. § 1201.113.

Copyright © 2006 LRP Publications

# EXHIBIT I




IN THE UNITED STATES COURT OF FEDERAL CLAIMS

1.   TED A. BRODOWY
     361 BEST PLACE ROAD
     HELENA, MT 59602

     and

2.   DIRK G. BROWN
     2120 DOPPLER STREET
     STRASBURG, CO 80136

     and

3.   CAROLYN M. GANDY
     267 JENNINGS ROAD
     HORSEHEADS, NY 14845

     and

4.   RON D. GANDY
     267 JENNINGS ROAD
     HORSEHEADS, NY 14845

     and

5.   TRACY JENSON
     32377 N. 6TH AVE.
     SPIRIT LAKE, IDAHO 83869

     and

6.   KENNETH B. KARNATH
     7800 SUNROSE DR. NW
     ALBUQUERQUE, NM 87120

     and

7.   JONATHAN A. MENDELSON
     57 STEEPLE DRIVE
     KINTNERSVILLE, PA 18930

     and

8.   CLYDE A. SMITH
     1341 DAYTON ROAD

HARRISBURG, PA 17113          05- 961C

and

9.    SHARON WILKINS
      19064 E. BELLEWOOD DR.
      AURORA, CO 80015

and

10.   MARILYN YAMAMOTO
      P.O. BOX 711345
      MOUNTAIN VIEW, HI 96771

                Plaintiffs,

      v.

THE UNITED STATES

                Defendant.

_____

## COMPLAINT

### Jurisdiction

11.    Jurisdiction in this Complaint is proper under the Tucker Act, 28 U.S.C. §1491,

for the reason that the Administrator of the Federal Aviation Administration (FAA), which is

part of the United States Department of Transportation, violated Title V of the U.S. Code,

including but not limited to 5 U.S.C. §5101 and §5334, and violated the Air Traffic Control

(ATC) Pay and Reclassification Rules implemented by the FAA, and violated the Fifth

Amendment Clause to the U.S. Constitution for purposes of converting Plaintiffs from the

(FG)GS pay system into the ATC pay system in or about October, November, and December

1999.

12.    The Tucker Act, 28 U.S.C. §1491(a)(1), provides that, "The United States Court

of Federal Claims shall have jurisdiction to render judgment upon any claim against the United



States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."

13.     Pursuant to the Back Pay Act, 5 U.S.C. §5596, each of the Plaintiffs are entitled to the retroactive recovery of wages back to in or about October, November, or December 1999 because each Plaintiff, as federal employees, have undergone an unjustified or unwarranted personnel action by the breach of the ATC Pay and Reclassification Rules, breach of 5 U.S.C. §5101 and §5334, and breach of the Fifth Amendment to the U.S. Constitution, that has resulted in the reduction of compensation to which each of the Plaintiff-employees are otherwise entitled.

Parties

14.     Plaintiffs are, or were at all relevant times, employed as air traffic controllers by the FAA, an administrative part of the DOT, which is an executive branch agency of the United States.

15.     The Defendant is the United States government and specifically the FAA, an administrative part of the United States Department of Transportation.

The Facts

16.     In the early 1990s, the FAA determined that it would privatize operations at 129 Level 1 air traffic control towers (FAA-operated towers) from 1994 through 1998, approximately 25 per year.

17.     This decision by the FAA caused all air traffic controllers employed by the FAA at Level 1 air traffic control towers to either (1) relocate to another FAA facility in order to remain employed by the FAA as air traffic control specialists; or (2) retire or resign from federal service.

18.    In the 1990s, the FAA had five classifications of air traffic control towers, classified according to the level of complexity and the volume of the air traffic they handle, ranging from Level 1 through Level 5, with Level 5 towers being the busiest towers.

19.    From 1994 through in or about March 2, 1998, when each of those air traffic controllers transferred from their Level 1 facilities to a higher level facility, the FAA applied 5 U.S.C. §5334(b) for purposes of determining their (FG)GS rate of pay at their new facility.

20.    5 U.S.C. §5334(b) provides that "an employee who is promoted or transferred to a position in a higher grade is entitled to basic pay at the lowest rate of the higher grade which exceeds his existing rate of basic pay by not less than two step-increases of the grade from which he is promoted or transferred. If, in the case of an employee so promoted or transferred who is receiving basic pay at a rate in excess of the maximum rate of his grade, there is no rate in the higher grade which is at least two step-increases above his existing rate of basic pay, he is entitled to-- (1) the maximum rate of the higher grade; or (2) his existing rate of basic pay, if that rate is the higher."

21.    On March 2, 1998, the U.S. District Court for the Northern District of Ohio in *National Air Traffic Controllers Association, MEBA, AFL-CIO v. Secretary of Department of Transportation* (N.D. Ohio 1998), 997 F. Supp. 874, vacated the FAA's privatization program for FAA-operated Level 1 towers for the reason that that FAA's decision to privatize Level 1 facilities did not meet the cost/benefit requirements of the Office of Management and Budget Circular A-76; a copy of which decision is attached as Exhibit "A".

22.    At the time of the Court decision on March 2, 1998, the FAA had already privatized over 75% of its Level 1 air traffic facilities with the remaining Level 1 air traffic facilities scheduled to be privatized in August 1998.



23.    Each of the Plaintiffs in this lawsuit, namely Ted A. Brodowy, Dirk G. Brown,

Carolyn M. Gandy, Ron D. Gandy, Tracy A. Jenson, Kenneth B. Karnath, Jonathan A.

Mendelson, Clyde A. Smith, Sharon Wilkins, and Marilyn Yamamoto, were employed as air

traffic controllers for the FAA at Level 1 facilities in March 1998 at the time of the Court

decision in *National Air Traffic Controllers Association, MEBA, AFL-CIO v. Secretary of*

*Department of Transportation, supra.*

24.    For the reason that the U.S. District Court in *National Air Traffic Controllers*

*Association, MEBA, AFL-CIO, supra,* vacated the privatization of Level 1 facilities, the Plaintiffs

in this lawsuit did not move to new air traffic facilities in August 1998 as previously scheduled

by the FAA.

25.    Effective October 1, 1998, the FAA instituted a new pay system for air traffic

controllers called the Air Traffic Controller pay system (ATC pay system) which converted air

traffic controllers at Level 2 through Level 5 air traffic facilities from the (FG)GS pay system to

the ATC pay system.

26.    Level 1 air traffic facilities were not converted into the ATC pay system, effective

October 1, 1998.

27.    The FAA did not establish an ATC pay scale at a Level 1 facility effective

October 1, 1998,  and air traffic controllers who worked at those facilities continued to be paid

under the (FG)GS pay system at that time.

28.    Upon implementation of the ATC pay system, each of the Level 2 through Level

5 air traffic control towers were given an ATC grade, that ranged from 6 through 12.

29.    Under the (FG)GS pay system, Level 2 through Level 5 air traffic facilities were

higher grade facilities than Level 1 facilities, and upon changing to ATC facilities, these former



Level 2 through Level 5 air traffic facilities continued to be higher grade facilities than the Level 1 air traffic facilities.

30.     Each of the ATC grades had pay bands, analogous to the "steps" under the (FG)GS pay system.

31.     This ATC pay system was created by reason of a reduction of front-line managers to front-line personnel that created an approximate $200 million dollar pool for pay raises to the controllers.

32.     Conversion into the ATC pay system was based upon a formula tied into the air traffic controller's grade and step level under the (FG)GS pay system; it was not merit based.

33.     Pursuant to 5 U.S.C. §5101(1)(A), the basic rate of pay that a federal employee is to receive is governed by the principle of equal pay for substantially equal work.

34.     Conversion into ATC pay system was not supposed to deviate from the aforementioned principle in 5 U.S.C. §5101(1)(A) that each air traffic controller is to receive equal pay for substantially equal work.

35.     A Rule 35 (hereafter the "Conversion Rule") was adopted by the FAA for purposes of converting an air traffic controller from the (FG)GS pay scale to the ATC pay scale.

36.     The Conversion Rule (Rule 35) allowed air traffic controllers to maintain their former grade and steps under the FG(GS) pay system when converted to the ATC pay system.

37.     The Conversion Rule (Rule 35) provides:

**35.CPC Conversion from the FG Pay Schedules to the ATC Pay Levels.**

Effective October 1, 1998, the following steps will be taken to transition bargaining unit employees to the ATC pay system. It is understood that the  pay targets established under these rules will not be changed unless **required to accommodate distribution of the $200 million dollars as specified in paragraph 5 of the Principal MOA.**




Step 1: Establish the percentage difference between each employee's current FG grade and step above the current FG grade step for their assigned facility (including locality).

Step 2: Multiply the minimum base pay of the assigned ATC level pay band by that percentage. Add that figure to the minimum of the pay band to establish each employees target base pay. If the employee's target base pay does not exceed their current base pay by a minimum of 9.1%, the employee's target base pay will be adjusted upward to meet this minimum. Each employee's target base pay will be transitioned in three phases to reach the target base pay.

Year 1: Determine the first transitional base pay for each employee by:

A. Add 4.1% (ATRA) to each employee's base pay (FG grade, step plus locality);

B. Add any applicable IIP and/or Pay Demonstration entitlement; then,

C. Subtract the transition base pay from the target base pay to determine the amount of increase in base pay to be apportioned over the three years of the transition. Determine the amount to be apportioned in each year by the following approximate percentages:

Year 1=32.094%, Year 2=36.785%, Year 3=31.121% (totaling 100%). Add the year one increment to the transition pay base to determine the year one base pay; and,

D. Add (A), (B) and (C) to determine the first transitional base pay, retroactive to October 1, 1998.

Year 2: Add the identified dollar amount (Year 2(C)) to employee's base pay in the first full pay period of fiscal year 2000.

Year 3: Add the identified dollar amount (Year 3(C)) to employee's base pay in the first full pay period of fiscal year 2001.

Note: Facilities currently classified as Level 1, and that are scheduled to be contracted out by end of fiscal year 1998, will not be classified within the new ATC levels. Those facilities will be treated in accordance with current pay policies with the exception that their base pay will be increased by 5% in the first year.

(A copy whereof is attached as part of Exhibit "B".)

38.    The FAA did not apply the Conversion Rule (Rule 35) to any of the Plaintiffs in October 1998 because they were at a Level 1 facility on that date and each of the Plaintiffs remained under the (FG)GS pay system as indicated in the note to the Conversion Rule (Rule 35).



39.     The only reason that the Plaintiffs continued to be at a Level 1 facility in October 1998 was because their Level 1 facility had not been privatized pursuant to the U.S. District Court decision in *National Air Traffic Controllers Association, MEBA, AFL-CIO v. Secretary of Department of Transportation* (N.D. Ohio 1998), 997 F. Supp. 874.

40.     The FAA applied the Conversion Rule (Rule 35) to all other air traffic controllers who converted from the (FG)GS pay system into the ATC pay system effective October 1998, and were employed at Level 2 through Level 5 air traffic facilities.

41.     In or about March 1999, the FAA represented to the Court in *National Air Traffic Controllers Association, MEBA, AFL-CIO v. Secretary of Department of Transportation, supra* that it had complied with OMB Circular A-76 and that the privatization of remaining Level 1 air traffic towers was appropriate.

42.     All air traffic controllers remaining at Level 1 facilities had until on or about April 1, 1999, to decide what ATC air traffic facility to transfer to, and a higher grade ATC air traffic facility paid more than a lower grade ATC pay facility.

43.     In 1999, the FAA scheduled Plaintiffs (and other remaining air traffic controllers at Level 1 facilities) to transfer to ATC facilities in or about October, November, or December 1999 at which time each of the Plaintiffs would convert into the ATC pay system.

44.     All ATC facilities in 1999 were previously Level 2 through 5 air traffic facilities and were facilities of a higher grade under the (FG)GS pay system than the Level 1 air traffic facilities that were being privatized.

45.     At the time that Plaintiffs were transferred to their higher grade ATC facilities in or about October, November, or December 1999, Plaintiffs were paid under the (FG)GS pay system.

9



46. For the reason that Plaintiffs continued to be paid in 1999 in accordance with (FG)GS pay regulations, they should have transferred to their new ATC air traffic facilities in accordance with 5 U.S.C. §5334(b) for purposes of determining their appropriate grade and step at such facilities, and then had the Conversion Rule (Rule 35) applied to them to convert them from the (FG)GS pay system to the ATC pay system, as was done with all other air traffic controllers who transferred to higher level facilities and converted into the ATC pay system prior to the Court decision rendered in *National Air Traffic Controllers Association, MEBA, AFL-CIO v. Secretary of Department of Transportation, supra.*

47. The FAA did not apply 5 U.S.C. §5334(b) and the Conversion Rule (Rule 35) to each of the Plaintiffs to convert them from the (FG)GS pay system into the ATC pay system in or about October, November, or December 1999, and as a result Plaintiffs lost earned grade and pay steps during their conversion from the (FG)GS pay system to the ATC pay system.

48. At the time that each of the Plaintiffs chose an ATC air traffic facility to transfer to in 1999, Plaintiffs understood from the FAA that they would transfer to the new ATC facilities under the (FG)GS pay regulations and then through application of the Conversion Rule (Rule 35) would convert into the ATC pay system, and each of the Plaintiffs detrimentally relied upon that understanding from the FAA for purposes of choosing a particular ATC air traffic facility to which to transfer.

49. An ATC pay band is approximately $30,000 wide, and each of the Plaintiffs sustained losses of between approximately $10,000.00 per year and $30,000.00 per year by reason of the FAA's failure to transfer them to their ATC facilities pursuant to 5 U.S.C. §5334(B) for purposes of establishing their appropriate grade and step at such facility, and then



apply the Conversion Rule (Rule 35) to convert them into the ATC pay system in or about October, November, or December 1999.

50.    Since in or about October, November, and December 1999, Plaintiffs have exhausted all known means, without resort to this instant litigation, in an attempt to have the FAA apply 5 U.S.C. §5334(b) to them upon their transfer to a higher facility for purposes of establishing their appropriate grade and step, and apply the Conversion Rule (Rule 35) to convert them from the (FG)GS pay system to the ATC pay system as was applied to convert all other air traffic controllers from the (FG)GS to the ATC pay system who were not otherwise delayed by reason of the U.S. District Court Decision in *National Air Traffic Controllers Association, MEBA, AFL-CIO, supra,* that had vacated the privatization of Level 1 facilities because of the FAA's violation of law.

51.    Through this lawsuit, Plaintiffs demand equal treatment for purposes of conversion from the (FG)GS pay system into the ATC pay system as was accorded all other air traffic controllers who converted into the ATC pay system who were not otherwise delayed by reason of the U.S. District Court Decision in *National Air Traffic Controllers Association, MEBA, AFL-CIO, supra.*

## COUNT I:

### THE FAA VIOLATED TITLE V, 5 U.S.C. 5334(B) AND 5101(1)(A), ITS ATC PAY AND RECLASSIFICATION RULES, WHEN CONVERTING PLAINTIFFS FROM THE (FG)GS PAY SYSTEM TO THE ATC PAY SYSTEM ENTITLING PLAINTIFFS TO BACK PAY, FUTURE PAY ADJUSTMENT AND BENEFITS UNDER THE TUCKER ACT, 28 U.S.C. §1491 AND BACK PAY ACT, 5 U.S.C. §5596

52.    Plaintiffs incorporate all prior allegations set forth in paragraphs 1 through 51 of the Complaint as if fully rewritten herein.

53.    The United States unlawfully bypassed and violated its pay regulations by not applying 5 U.S.C. §5334(b) to Plaintiffs in or about October, November, and December 1999, for purposes of establishing their appropriate grade and step level at their new higher grade facility for purposes of conversion into the ATC pay system.

54.    The United States' failure to apply 5 U.S.C. §5334(b) to each of the Plaintiffs upon their transfer to higher level facilities in October, November, and December 1999 meant that Plaintiffs were treated differently than all prior air traffic controllers who transferred from Level 1 facilities to higher level facilities from 1994 through March 2, 1998, during the first three (3) years of the privatization of Level 1 facilities.

55.    The United States further violated its own ATC Pay and Reclassification Rules by not applying the Conversion Rule (Rule 35) to convert each of the Plaintiffs from the (FG)GS pay system into the ATC pay system, after establishing their appropriate grade and step level pursuant to 5 U.S.C. §5334(b) at their new facilities, in or about October 1999, November 1999, December 1999, when such Conversion Rule (Rule 35) was applied to all other air traffic controllers converted into the ATC pay system from the (FG)GS pay system who were not delayed by reason of the U.S. District Court Decision in *National Air Traffic Controllers Association, MEBA, AFL-CIO, supra*, that had vacated the privatization of Level 1 facilities because of the FAA's violation of law.

56.    As a result of the United States failure to apply 5 U.S.C. §5334(b) to each of the Plaintiffs to establish their appropriate grade and step level at their new facilities in October, November, and December 1999, and use of the Conversion Rule (Rule 35) to convert them from the (FG)GS pay system to the ATC pay system, the Plaintiffs have suffered a loss of earned grade and pay steps during their conversion from the (FG)GS pay system into the ATC pay

system as compared to other air traffic controllers to whom 5 U.S.C. §5334(b) and the

Conversion Rule (Rule 35) were applied, and have sustained losses in compensation and earned

benefits since October, November, or December 1999 in amounts ranging between $50,000.00

and $150,000.00, which damages will continue to grow each year of their employment and into

retirement because retirement income is based upon a percentage of their pay while an active air

traffic controller.

     58.    The sole reason that Plaintiffs did not transfer from their Level 1 air traffic facility

in 1998 and prior to the implementation of the ATC pay system effective October 1998 is the

Court decision as reported in *National Air Traffic Controllers Association, MEBA, AFL-CIO v.*

*Secretary of Department of Transportation* (N.D. Ohio 1998), 997 F. Supp. 874.

     59.    The FAA refused to apply the Conversion Rule (Rule 35) to Plaintiffs effective

October, November or December 1999 upon their conversion into the ATC pay system in

retaliation to the litigation giving rise to *National Air Traffic Controllers Association, MEBA,*

*AFL-CIO v. Secretary of Department of Transportation* (N.D. Ohio 1998), 997 F. Supp. 874.

     60.    The Plaintiffs were entitled to transfer to their new ATC air traffic facilities in or

about October, November, and December 1999, and have 5 U.S.C. §5334(b) applied for

purposes of determining their appropriate grade and step level at their new facilities, and then

convert into the ATC pay system through utilization of the Conversion Rule (Rule 35) in the

same manner as all other air traffic controllers who converted into the ATC pay system who

were not delayed by reason of the U.S. District Court Decision in *National Air Traffic*

*Controllers Association, MEBA, AFL-CIO, supra*, that had vacated the privatization of Level 1

facilities because of the FAA's violation of law.

61.    The FAA violated 5 U.S.C. §5334(b) when they failed to apply that statutory

provision to Plaintiffs upon their transfer to higher level facilities in October, November, and

December 1999, to establish their (FG)GS grade and step and violated the Conversion Rule

(Rule 35) and 5 U.S.C. §5101(1)(A), when they failed to utilize the Conversion Rule (Rule 35) to

convert Plaintiffs from the (FG)GS pay system to the ATC pay system in October, November,

and December 1999, and these violations entitle Plaintiffs to relief under the Back Pay Act, 5

U.S.C. §5596, and the adjustment of back pay, current and future pay and benefits retroactive to

October, November, or December 1999 when they converted into the ATC pay system.

### COUNT II:

### THE FAA VIOLATED THE FIFTH AMENDMENT TO THE U.S. CONSTITUTION BY NOT APPLYING TITLE V, 5 U.S.C. 5334(B), AND RULE 35 OF ITS ATC PAY AND RECLASSIFICATION RULES TO CONVERT PLAINTIFFS FROM THE (FG)GS PAY SYSTEM TO THE ATC PAY SYSTEM, IN THE SAME MANNER AS APPLIED TO ALL OTHER AIR TRAFFIC CONTROLLERS NOT DELAYED FROM CONVERTING INTO THE ATC PAY SYSTEM BY REASON OF THE U.S. DISTRICT COURT DECISION IN *NATIONAL AIR TRAFFIC CONTROLLERS ASSOCIATION, MEBA, AFL-CIO, SUPRA*, ENTITLING PLAINTIFFS TO BACK PAY, FUTURE PAY ADJUSTMENT AND BENEFITS UNDER THE TUCKER ACT, 28 U.S.C. §1491 AND BACK PAY ACT, 5 U.S.C. §5596

62.    Plaintiffs incorporate all prior allegations set forth in paragraphs 1 through 61 of

the Complaint as if fully rewritten herein.

63.    The United States did not apply 5 U.S.C. §5334(b) to each of the Plaintiffs for

purposes of establishing their grade and step upon their transfer to higher grade facilities in

October, November, and December 1999, and did not apply the Conversion Rule (Rule 35) to

convert Plaintiffs from the (FG)GS pay system to ATC pay system because they were delayed

from transferring from their Level 1 facilities by reason of the U.S. District Court Decision in

*National Air Traffic Controllers Association, MEBA. AFL-CIO, supra.*



64.     The United States' failure to apply 5 U.S.C §5334(b) to each of the Plaintiffs upon their transfer to higher grade air traffic facilities in October, November, and December 1999 for purposes of establishing their grade and step, and failure to apply the Conversion Rule (Rule 35) to convert each of the Plaintiffs from the (FG)GS pay system to the ATC pay system, meant that Plaintiffs were converted in a different, and unequal manner in violation of the Fifth Amendment to the U.S. Constitution, when compared to all other air traffic controllers who converted into the ATC pay system from the (FG)GS pay system who were not delayed by reason of the U.S. District Court Decision in *National Air Traffic Controllers Association, MEBA, AFL-CIO, supra.*

65.     As a result of the United States failure to apply 5 U.S.C. §5334(b) to each of the Plaintiffs upon their transfer to higher level facilities in October, November, and December 1999 for purposes of establishing their grade and step, and the Conversion Rule (Rule 35) to convert Plaintiffs from the (FG)GS pay system to the ATC pay system, Plaintiff have sustained losses in compensation and earned compensation benefits since October, November, or December 1999 in amounts ranging between $50,000.00 and $150,000.00, which damages will continue to grow each year of their employment and into retirement because retirement income is based upon a percentage of their pay while an active air traffic controller.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs request the following relief from this Court:

A.     Declaratory Judgment against the United States that it violated 5 U.S.C. §5334(b), by not applying that statutory provision to establish each of the Plaintiffs' grade and step upon their transfer to higher grade air traffic control facilities in or about October, November, and December 1999, and that the United States violated 5 U.S.C. 5101(1)(A) and its ATC Pay and



Reclassification Rules by not applying the Conversion Rule (Rule 35) to convert each of the Plaintiffs from the (FG)GS pay system into the ATC pay system.

B.    Declaratory Judgment against the United States that it violated the Fifth Amendment to the U.S. Constitution for failing to apply 5 U.S.C. §5334(b) to each of the Plaintiffs for purposes of determining their appropriate grade and step upon their transfer to higher grade air traffic facilities in October, November, and December 1999 and failure to apply the Conversion Rule (Rule 35) to convert Plaintiffs from the (FG)GS pay system to the ATC pay system as was applied to all other controllers converted into the ATC pay system who were not delayed from this conversion by reason of the U.S. District Court Decision in *National Air Traffic Controllers Association, MEBA, AFL-CIO, supra.*

C.    That the FAA retroactively effect the transfer of Plaintiffs to their new higher grade facilities in or about October, November, or December 1999 by applying 5 U.S.C. §5334(b) to determine their appropriate and step at such facilities, and then apply the Conversion Rule (Rule 35) to each of the Plaintiffs to convert them into the ATC pay system (as was done to all other air traffic controllers not delayed from this conversion by *National Air Traffic Controllers Association, MEBA, AFL-CIO, supra*), with full back pay/benefit adjustments pursuant to the Back Pay Act, 5 U.S.C. §5596 and other applicable laws, as well as current and future pay/benefit adjustments.

D.    Prejudgment interest on all monetary sums awarded to Plaintiffs;

E.    Plaintiffs' attorneys fees and costs; and

F.    Such other relief as the Court deems just.

Respectfully submitted,

M. Scott Young, Esq.
THOMPSON HINE, LLP
312 Walnut Street, Suite 1400
Cincinnati, Ohio 45202
Tele: (513) 352-6617
Fax: (513) 241-4771
Scott.Young@Thompsonhine.com

Attorneys for Plaintiffs

# EXHIBIT J

# In the United States Court of Federal Claims

Case No. 05-961C (Consolidated)
(Filed: July 11, 2006)
NOT TO BE PUBLISHED

```
* * * * * * * * * * * * * * * * * * * * * * * * *    *
                                                     *
TED A. BRODOWY, ET AL.,                              *
                   Plaintiffs,                       *
                                                     *
         v.                                          *
                                                     *
THE UNITED STATES OF AMERICA,                        *
                   Defendant.                        *
                                                     *
* * * * * * * * * * * * * * * * * * * * * * * * *    *
```

**Malcom Scott Young**, Thompson Hine, LLP, Cincinnati, Ohio, attorney of record for Plaintiffs.

**Joan M. Stentiford**, Commercial Litigation Branch, Department of Justice, Washington, D.C., attorney of record for Defendant. With her on the briefs were **Peter D. Keisler**, Assistant Attorney General, **David M. Cohen**, Director, **Kathryn A. Bleecker**, Assistant Director, and **David R. Feniger**, Trial Attorney.

**Sarah Leigh Martin**, law clerk.

## OPINION

BASKIR, Judge.

Plaintiffs, current or former air traffic controllers, had been paid under the General Schedule ("GS") pay system prior to 1999. They all transferred to higher level facilities after the FAA converted all higher level facilities to a new pay system (the "ATC" system). They bring claims for back pay, alleging that they were entitled to a re-grade of their pay before or upon transferring to the new facilities and into the ATC pay system. Plaintiffs fail to establish that their Complaint is grounded on a money-mandating statute. **Therefore, the Defendant's Motion to Dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction is granted.** *See Fisher v. United States*, 402 F.3d 1167, 1175 (Fed. Cir. 2005).

## BACKGROUND

Plaintiffs are ten air traffic controllers currently or formerly employed by the U.S. Federal Aviation Administration ("FAA") who seek the retroactive recovery of wages pursuant to the Back Pay Act. The FAA formerly employed air traffic controllers at facilities ranging in classification from Level 1 through Level 5, Level 5 towers being the busiest. The GS level of air traffic controllers was a function of their facility, ranging from GS 10 for Level 1 to GS 15 for Level 5. According to the Plaintiffs, all air traffic controllers were compensated under the (FG)GS pay system before 1998. The FG system refers generically to the system that was to be developed for FAA personnel pursuant to 49 U.S.C. § 40122(g)(1). *See* Def. Br. at 19. The General Service ("GS") pay system is the general pay system for employees of the Federal Government in administrative, professional, and technical positions that is commonly utilized at other government agencies. The Plaintiffs continued to be paid under the GS system until late 1999, and they refer to that compensation as the (FG)GS system.

In July 1998, the National Air Traffic Controllers Association ("NATCA") and the FAA reached a collective bargaining agreement ("CBA") regarding the institution of a new pay system. This Air Traffic Controller ("ATC") pay system created a set of "Pay and Reclassification Rules" for FAA employees that was to replace the existing (FG)GS pay system. Under the new ATC pay system, air traffic controllers at each of the Level 2 through 5 facilities were given an ATC designation that ranged from 6 through 12. The ATC pay system provided broader "pay bands" within each level that replaced the grades and steps of the previous (FG)GS pay system. Rule 35 of the agreement outlined a two-step procedure for converting the pay levels of air traffic controllers in Level 2 to 5 facilities from the (FG)GS to the ATC pay system. Rule 35's formula was not merit based, but rather tied to the air traffic controllers' previous grade and step levels under the old system. Level 1 facilities, however, were not classified within the new ATC levels.

Level 1 facilities were slated for private operation. From 1994 to 1998, the FAA privatized over seventy-five percent of its Level 1 air traffic facilities. Air traffic controllers at Level 1 facilities had to relocate to another higher level facility to remain employed by the FAA, or could retire or resign from federal service. The FAA transferred these Level 1 air traffic controllers to other higher level facilities. The FAA then applied 5 U.S.C. § 5334(b), which dictates pay conversions for promotions or transfers within GS pay system, to establish the employees' higher pay grades under the (FG)GS pay system corresponding with their new, higher level jobs. Then, on October 1, 1998, the new ATC pay system came into effect for air traffic controllers employed at Level 2 to 5 facilities. Upon this conversion, the FAA applied Rule 35 to convert the pay levels of each employee who was already employed at facilities ranging from Level 2 through 5.

In March 1998, a US. District Court temporarily vacated the FAA's privatization program. *See Nat'l Air Traffic Controllers Ass'n v. Sec'y of DOT*, 997 F. Supp. 874 (N.D. Ohio 1998). The FAA thus did not transfer its remaining Level 1 air traffic controllers, including Plaintiffs, before converting to the new ATC pay system. Plaintiffs remained at their Level 1 facilities and continued to be compensated under the (FG)GS pay system. The FAA did not establish an ATC pay scale for Level 1 facilities. When in 1999 the privatization program was allowed to continue, Plaintiffs were transferred to higher level facilities in or about October, November, or December 1999, approximately a year after the conversion to the ATC system had taken effect at those facilities.

Plaintiffs transferred directly into the ATC pay system when they began at their higher level facilities in 1999. Thus, their pay was automatically converted into the ATC pay system. Plaintiffs were assigned the lowest pay grade in the corresponding pay band of the ATC system, essentially being treated as newly hired employees. Plaintiffs allege that they understood from the FAA that they would transfer to the new ATC facilities under the (FG)GS pay regulations, be re-graded, and then through application of Rule 35 would convert into the ATC pay system at a higher level, just as the other air traffic controllers had. However, the FAA did not apply 5 U.S.C. § 5334(b) to determine Plaintiffs' new pay levels.

Plaintiffs filed their Complaint in this Court on August 31, 2005. They bring claims for back pay under the Back Pay Act, Rule 35 of the Pay and Reclassification Rules of the CBA, the Fifth Amendment to the U.S. Constitution, the Classification Act, and 5 U.S.C. § 5334(b). Plaintiffs claim that they lost pay steps they had earned under the (FG)GS pay system when they were assigned the lowest pay grade at their respective new facilities. The Defendant filed a Motion to Dismiss, which was fully briefed and argued.

## ANALYSIS

Before the Court is the Defendant's Motion to Dismiss for lack of subject matter jurisdiction, based on Rule 12(b)(1) of the U.S. Court of Federal Claims ("RCFC"), or in the alternative, for failure to state a claim upon which relief can be granted under RCFC 12(b)(6). Because we find no subject matter jurisdiction, we do not address Defendant's arguments under Rule 12(b)(6) for failure to state a claim.

On motions to dismiss, the Court views the facts alleged in the Complaint in the light most favorable to the non-moving party. *See Patton v. United States*, 64 Fed. Cl. 768, 773 (2005). Because the Defendant's Motion challenges this Court's jurisdiction, we may also consider outside evidence. *Id.* at 773.

The U.S. Court of Federal Claims is, like all Federal courts, a court of limited jurisdiction. *See Brown v. United States*, 105 F.3d 621, 623 (Fed. Cir. 1997). This Court may only hear a claim brought against the United States if Congress specifically and unambiguously waived the Government's sovereign immunity for such a suit.

Page 3

*United States v. King*, 395 U.S. 1, 4 (1969). According to the Tucker Act, a suit may be brought in this Court if it is founded upon the Constitution, an Act of Congress, a regulation, or a contract with the United States, if it does not sound in tort. 28 U.S.C. § 1491(a)(1).

The Tucker Act does not itself create a substantive right of recovery; a plaintiff must identify a money-mandating provision creating a substantive right and waiving the United States' sovereign immunity in order for this Court to have jurisdiction. *E.g.*, *United States v. Mitchell*, 445 U.S. 535, 538 (1980); *United States v. Testan*, 424 U.S. 392, 398 (1976). A money-mandating provision is one that "can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained." *Testan*, 424 U.S. at 400 (quoting *Eastport S.S. Corp. v. United States*, 178 Ct. Cl. 599, 607 (1967)).

The Defendant's Motion also focuses on the argument that Plaintiffs are seeking the benefit of positions to which they have not been appointed. However, the Court must first examine the provisions relied upon by Plaintiffs to determine whether any of them confers jurisdiction on this Court. As the necessary money-mandating provision, Plaintiffs rely upon the Back Pay Act, the ATC Pay and Reclassification Rules embodied in the collective bargaining agreement, the Fifth Amendment to the U.S. Constitution, 5 U.S.C. § 5101 (the Classification Act), and 5 U.S.C. § 5334(b). At oral argument Plaintiffs rested solely on the latter statute, but as jurisdiction is not waivable, we examine these other possible grounds as well.

## A.     The Back Pay Act

The Plaintiffs seek compensation under the Back Pay Act, 5 U.S.C. § 5596, for money allegedly due them based on an improper grade determination. The Back Pay Act entitles an employee to money damages when he or she "is found by appropriate authority under applicable law, rule, regulation, or collective bargaining agreement, to have been affected by an unjustified or unwarranted personnel action which has resulted in the withdrawal or reduction of all or part of" his or her pay. 5 U.S.C. § 5596(b)(1).

It is well established that the Back Pay Act is not itself a jurisdictional statute, as Plaintiffs' counsel conceded at oral argument. *See Salinas v. United States*, 52 Fed. Cl. 399, 401 (2002), *aff'd*, 323 F.3d 1047 (Fed. Cir. 2003) (citing *United States v. Connolly*, 716 F.2d 882, 887 (Fed. Cir. 1983)). In order for this Court to have jurisdiction over a claim for back pay, "[s]ome provision of law other than the Back Pay Act must first mandate, or at least be interpreted to mandate, money damages to an employee suffering an unjustified or unwarranted personnel action . . .'" *Salinas*, 52 Fed. Cl. at 401 (quoting *Walker v. United States*, 11 Cl. Ct. 77, 80 (1986)); *accord*

*Spagnola v. Stockman*, 732 F.2d 908, 912 (Fed. Cir. 1984). For these reasons, we must determine whether Plaintiffs have identified a statute or provision, other than the Back Pay Act, that mandates an award of money damages.

## B.     The Collective Bargaining Agreement

In its Motion, the Defendant contends that this Court does not have jurisdiction over a claim to enforce a collective bargaining agreement. In this case, the Plaintiffs rely upon the ATC Pay and Reclassification Rules, which are contained in a Memorandum of Understanding between the FAA and the NATCA, entered into on July 9, 1998. Plaintiffs ask us to enforce Rule 35, which requires that certain steps be taken when transferring employees from the FG(GS) system to the ATC system, including a step increase.

The Civil Service Reform Act ("CSRA") governs the enforcement of collective bargaining agreements in federal employment. *See* 5 U.S.C. § 7101 *et seq.* It provides that negotiated grievance procedures, required to be in all CBAs, are "the exclusive administrative procedures for resolving grievances which fall within its coverage." 5 U.S.C. § 7121(a)(1). The Court of Appeals for the Federal Circuit has held that Congress' addition of the word "administrative" to this provision in 1994 expressed its intent to allow judicial relief for employee grievances that fall within the scope of the negotiated grievance procedures. *Mudge v. United States*, 308 F.3d 1220 (Fed. Cir. 2002); *accord O'Connor v. United States*, 308 F.3d 1233 (Fed. Cir. 2002). That is, the CSRA was not intended to prohibit judicial remedies that were otherwise provided by law. In contrast, the Court of Appeals in *Salinas v. United States*, 323 F.3d 1047 (Fed. Cir. 2003), held that the Merit Systems Protection Board had exclusive jurisdiction over the plaintiff's grievance claim, brought pursuant to the Back Pay Act.

In *Zaccardelli v. United States*, 68 Fed. Cl. 426, 433 (2005), Judge Firestone reconciled these holdings and explained when the Court of Federal Claims has jurisdiction over claims based upon a CBA:

> When read together, *Salinas*, *Mudge*, and *O'Connor* stand for the proposition that the jurisdiction of the Court of Federal Claims over a claim covered by the CSRA depends on whether the claim involves a statutory basis for jurisdiction that is *independent of the CSRA*.

(emphasis added). In addition to a CBA and the CSRA, the cited cases involved claims pursuant to the Back Pay Act, the Prevailing Wage Systems Act, and the Fair Labor Standards Act, respectively. *See id.* at 432.

The court in *Zaccardelli* noted that the Court of Federal Claims had jurisdiction over the plaintiffs' claims in *Mudge* and *O'Connor*, but not in *Salinas*. As mentioned earlier, this Court does not have jurisdiction based solely upon the Back Pay Act. Only

Page 5

the plaintiffs in *Mudge* and *O'Connor*, then, had articulated an independent, money-mandating provision (the Prevailing Wage Systems Act and the Fair Labor Standards Act, respectively).

The CBA itself is not a contract within the meaning of the Tucker Act, so the plaintiff in *Zaccardelli*, who had not identified any other money-mandating statute, had not established jurisdiction in the Court of Federal Claims. *Id.* at 433. *Zaccardelli's* holding is consistent with our reading of the rule set forth in *Mudge* – that the CSRA does not deprive the employee of a judicial remedy for an employee grievance if jurisdiction in this Court otherwise exists. *See Mudge*, 308 F.3d at 1232 (The CSRA "no longer restricts a federal employee's right to pursue an employment grievance in court.").

One reason for the *Zaccardelli* rule is that federal employment is governed by statute, not by contract, *Adams v. United States*, 391 F.3d 1212, 1221 (Fed. Cir. 2004), so a collective bargaining agreement cannot be an independent basis to challenge a violation of federal employment. In addition, although the CSRA does not deprive a plaintiff of his right to enforce independent statutory rights in court, it does provide a comprehensive scheme of administrative review applicable to remedy adverse employment actions. *See Mudge*, 308 F.3d at 1228. The Merit Systems Protection Board's jurisdiction over those administrative claims prevents this Court from hearing suits for back pay based solely on violations of the CSRA that are covered by its administrative-review provisions. *See Salinas*, 323 F.3d at 1049; *see also Zaccardelli*, 68 Fed. Cl. at 433 (refusing to assert jurisdiction over "claims of violations of the CBA [that] are simply employee grievances, which are governed by the CBA's grievance procedures, as set forth in the CSRA").

Applying *Zaccardelli* to the current case, it is clear that this Court has jurisdiction over Plaintiffs' claims only if they identify a money-mandating provision that is independent of the CBA itself.

## C.     The Classification Act

In their Complaint, Plaintiffs claim jurisdiction based upon the Classification Act of 1949, 5 U.S.C. § 5101. However, the parties do not address this statute in their briefs. Section 5101 provides for "a plan for classification of positions whereby. . . the principle of equal pay for substantially equal work will be followed." *Id.* The Plaintiffs invoke this statute apparently because they were treated differently from all other air traffic controllers who were converted to the ATC pay system.

In *Testan*, the Supreme Court squarely held that the Classification Act is not a money-mandating statute that waives the Government's sovereign immunity. *Testan*, 424 U.S. at 399-400. Although it provides for a classification system of equal pay for

equal work, "none of these several sections contains an express provision for an award of backpay to a person who has been erroneously classified." *Id.*

As stated in *Testan*, it is not the case that Plaintiffs have no remedy at all -- administrative relief is detailed in the Classification Act, *id.* at 403, as it is for enforcement of collective bargaining agreements in the Civil Service Reform Act, *Zaccardelli*, 68 Fed. Cl. at 433. It is only the case that employees cannot seek retroactive classification and monetary relief in this Court for violations of those statutes alone.

### D.     5 U.S.C. § 5334(b)

Plaintiffs, citing 5 U.S.C. § 5334(b), claim that they are entitled to a pay increase. That statute provides in part:

> An employee who is *promoted or transferred to a position in a higher grade* is entitled to basic pay at the lowest rate of the higher grade which exceeds his existing rate of basic pay by not less than two step-increases of the grade from which he is promoted or transferred.

5 U.S.C. § 5334(b) (emphasis added). "Grade" is given the definition it has in section 5102, *see* §5331(a), which defines it as:

> includ[ing] all classes of positions which, although different with respect to kind or subject-matter of work, are sufficiently equivalent as to – (A) level of difficult and responsibility; and (B) level of qualification requirements of the work; to warrant their inclusion within one range of rates of basic pay *in the General Schedule.*

5 U.S.C. § 5102(a)(5) (emphasis added).

The implementing regulations define the scope of coverage as follows:

> This subpart covers employees who occupy positions classified and paid under the GS classification and pay system . . .

5 C.F.R. § 531.202. Under the regulations, "promotion" means:

> a GS employee's movement *from one GS grade to a higher GS grade* while continuously employed (including such a movement in conjunction with a transfer).

5 C.F.R. § 531.203 (emphasis added). "Transfer" means:

> a change of an employee, without a break in service of 1 full workday, from one branch of the Federal Government (executive, legislative, or judicial) to another or from one agency to another.

*Id.*

In examining an employee promotion from a non-GS position to a GS position, the U.S. Supreme Court held that section 5334(b) only applies to promotions *within* the GS system. *United States v. Clark*, 454 U.S. 555, 561 (1982). In *Clark*, the employees were promoted from a position in the prevailing rate wage system ("WS") to a position of a higher grade in the GS system. The Court looked to the plain language of the statute and section 5102's definition of "grade," as quoted above. That term specifically references steps in the General Schedule. The Court concluded that the plain language of the statute compels the conclusion that the two-step increase rule of section 5334(b) applies "only to promotions or transfers of employees already within the GS system." *Id.*

Plain meaning notwithstanding, the Court in *Clark* also examined the legislative history of section 5334(b) and concluded that Congress was only concerned with movement within the GS system, not movement between the GS and WS systems. *Id.* at 564. Finally, the Court analyzed a then-existing regulation, which clearly stated that the pay increase only applied to transfers or promotions within the GS system. Because "the construction of a statute by those charged with its administration is entitled to great deference," the Court concluded that the pay increase did not apply to employees transferring from another system. *Id.* at 565-66.

It was not clear whether the Supreme Court's reasoning in *Clark* also applied to the reverse situation – a promotion from the GS system to another system. The Federal Circuit has held that it did. *Libretto v. United States*, 230 Ct. Cl. 790 (1982); *Morriss v. United States*, 231 Ct. Cl. 811 (1982). The Federal Circuit in those cases clearly stated:

> It therefore follows that section 5334(b) does not apply to movement between GS and WS in either direction.

*Libretto*, 230 Ct. Cl. at 791; *Morriss*, 231 Ct. Cl. at 812.

Although the ATC system is distinct from the WS system, the Supreme Court's reasoning applies equally to the instant case. The plain language of section 5334(b), as well as the implementing regulations, compel the conclusion that the statute only covers promotions or transfers within the GS system. *See Clark*, 454 U.S. at 561.

5 C.F.R. § 531.203 (emphasis added). "Transfer" means:

> a change of an employee, without a break in service of 1 full workday,
> from one branch of the Federal Government (executive, legislative, or
> judicial) to another or from one agency to another.

*Id.*

In examining an employee promotion from a non-GS position to a GS position, the U.S. Supreme Court held that section 5334(b) only applies to promotions *within* the GS system. *United States v. Clark*, 454 U.S. 555, 561 (1982). In *Clark*, the employees were promoted from a position in the prevailing rate wage system ("WS") to a position of a higher grade in the GS system. The Court looked to the plain language of the statute and section 5102's definition of "grade," as quoted above. That term specifically references steps in the General Schedule. The Court concluded that the plain language of the statute compels the conclusion that the two-step increase rule of section 5334(b) applies "only to promotions or transfers of employees already within the GS system." *Id.*

Plain meaning notwithstanding, the Court in *Clark* also examined the legislative history of section 5334(b) and concluded that Congress was only concerned with movement within the GS system, not movement between the GS and WS systems. *Id.* at 564. Finally, the Court analyzed a then-existing regulation, which clearly stated that the pay increase only applied to transfers or promotions within the GS system. Because "the construction of a statute by those charged with its administration is entitled to great deference," the Court concluded that the pay increase did not apply to employees transferring from another system. *Id.* at 565-66.

It was not clear whether the Supreme Court's reasoning in *Clark* also applied to the reverse situation – a promotion from the GS system to another system. The Federal Circuit has held that it did. *Libretto v. United States*, 230 Ct. Cl. 790 (1982); *Morriss v. United States*, 231 Ct. Cl. 811 (1982). The Federal Circuit in those cases clearly stated:

> It therefore follows that section 5334(b) does not apply to movement
> between GS and WS in either direction.

*Libretto*, 230 Ct. Cl. at 791; *Morriss*, 231 Ct. Cl. at 812.

Although the ATC system is distinct from the WS system, the Supreme Court's reasoning applies equally to the instant case. The plain language of section 5334(b), as well as the implementing regulations, compel the conclusion that the statute only covers promotions or transfers within the GS system. *See Clark*, 454 U.S. at 561.

Plaintiffs explicitly recognize that the Supreme Court's ruling limits section 5334's application to "transfers or promotions within the GS pay system." Pl. Br. at 25. While they claim the benefits of section 5334(b) and claim it was "violated," id., they cannot escape the fact that all Level 2 through 5 ATC facilities were converted to the ATC pay system in 1998, see CSUF ¶ 10. Thus, Plaintiffs were transferred from the GS system to the ATC system in 1999; their transfers were not "within the GS system" as required by Clark.

Plaintiffs' counsel posited at oral argument that Clark is distinguishable from the present case. Unlike the WS system, the ATC system is essentially the same as the GS system. The Plaintiffs here did not change jobs, but were merely converted from one pay system to a new system that was, in effect, the same as the old. Plaintiffs' argument fails for two reasons. First, there are important differences between the ATC and GS pay systems, as Plaintiffs' counsel explained at oral argument. The ATC system does not contain steps within each pay band or grade, as the GS system does. Thus, an employee in a given ATC position is not subject to periodic increases in pay based on seniority.

Second, the Supreme Court's holding in Clark rested primarily upon the plain language of section 5334(b) and its implementing regulations – not upon the distinction between the GS and WS systems. Clark, 454 U.S. at 560-61. The Court's conclusion that there was "no necessary or obvious relationship" between the GS and WS systems was an additional yet unnecessary reason in support of its ruling; we do not read that as the determining rationale for the Court's holding. See id. at 564-65. We think the rule set forth in Clark is clear and must be applied in this case. See id. at 561 ("[T]he statute and the accompanying regulations reveal a congressional intent to apply the two-step increase provision of § 5334(b) only to promotions or transfers of employees already within the GS system.").

Plaintiffs further argue that they were entitled to a pay increase based on a grade calculation after their promotion but before they were converted to the ATC pay system. Pl. Br. at 13. They claim that section 5334(b) should have been applied to them "upon" their transfer to a new facility but "prior to" their conversion to the ATC pay system. See Pl. Br. at 19. This is an attempt to fall within the coverage of section 5334(b) by implying that the transfer consisted of two separate steps – first, a transfer "within" the GS system to a new facility, and second, a conversion to the new ATC system. However, they do not allege in their Complaint that their promotion in fact consisted of these two steps, or that they were ever paid under the GS system after transferring to their new ATC facilities. Their argument fails to acknowledge that the transfer to a new facility was a transfer into the ATC system. The new facilities had already been converted to the ATC system in October of 1998, and the FG(GS) pay system no longer existed for air traffic controllers. Their transfer was simultaneously one to a new facility and to a new pay system.

Plaintiffs do not point to any statutory provision that entitles them to a pay increase under the GS system *prior* to a transfer or promotion to the position that allegedly gives them the right to a higher rate of pay. The plain language of section 5334(b) applies upon the transfer or promotion in question, not sometime prior.

### E.     The Fifth Amendment

The Plaintiffs rely upon the Fifth Amendment to the U.S. Constitution in their Complaint. Although they do not specify which clause of the Fifth Amendment they refer to, they appear to be invoking the equal protection clause. *See* Complaint at ¶ 64 ("Plaintiffs were converted in a different, and unequal manner in violation of the Fifth Amendment . . .").

Neither the Fifth Amendment's due process clause, *Murray v. United States*, 817 F.2d 1580 (Fed. Cir. 1987), nor its equal protection clause, *Bounds v. United States*, 1 Cl. Ct. 215 (1983), *aff'd without op.*, 723 F.2d 68 (Fed. Cir. 1983), is a money-mandating provision within the meaning of the Tucker Act. In their brief, the Plaintiffs do not respond to the Defendant's argument that we have no jurisdiction over due process claims. Although nothing prevents the Court from hearing constitutional claims, we must properly assert jurisdiction over the complaint in the first instance. *See Terran v. Sec'y of DHHS*, 195 F.3d 1302, 1309-10 (Fed. Cir. 1999).

### CONCLUSION

None of the provisions cited by the Plaintiffs is money-mandating, except section 5334(b). That provision is, however, clearly inapplicable to Plaintiffs' circumstances. Therefore, in the absence of a money-mandating provision supporting Plaintiffs' claims, we conclude we have no subject matter jurisdiction.

**Defendant's Motion to Dismiss is hereby GRANTED, and Plaintiffs' Complaint is DISMISSED. Each party is to bear its own costs.**

**IT IS SO ORDERED.**

_____
LAWRENCE M. BASKIR
Judge

Page 10

# EXHIBIT K



**U.S. Department of
Transportation**

**Office of the Secretary
of Transportation**

Departmental Office of
Civil Rights

Washington Regional Office
400 Seventh Street., S.W.
Washington, D.C. 20590

MAR  1 2006

## CERTIFIED MAIL
## RETURN RECEIPT REQUESTED

Mr. Tracy Allen Jenson
3121 N. Alfalfa Loop
Post Falls, Idaho 83854

Ref:  DOT Complaint No. 2006-20012-FAA-02

Dear Mr. Jenson:

This is in further reference to your complaint filed on January 16, 2006, against the
Department of Transportation, Federal Aviation Administration (FAA).  Complaints
filed against the Department of Transportation are processed in accordance with the
Equal Employment Opportunity Commission (EEOC) regulation, 29 C.F.R. Part
1614, et. seq.  A thorough review of your complaint and related documents indicate
that you have raised the following claims:

    1)  Were you discriminated against based on your **age** (47) and **reprisal** when
        you were forced to retire in April 2003 and take legal action against the
        FAA for violating pay regulations; and

    2)  Were you discriminated against based on your **age** (47) and **reprisal** when
        the FAA did not rehire you after being forced to retire in 2003?

A determination has been made to dismiss your complaint for the following reasons:

       The EEOC regulations at 29 C.F.R. § 1614.107(a)(1) permit Federal agencies
       to dismiss a complaint or a portion of a complaint that **fails to state a claim**
       under Sections § 1614.103 or § 1614.106(a).

The regulation set forth at 29 C.F.R. § 1614.107(a)(1) provides, in relevant part, that
an agency shall dismiss a complaint that fails to state a claim. An agency shall accept
a complaint from any aggrieved employee or applicant for employment who believes
that he or she has been discriminated against by that agency because of race, color,
religion, sex, national origin, age or disabling condition. 29 C.F.R. §§ 1614.103,
.106(a). The Commission's federal sector case precedent has long defined an
"aggrieved employee" as one who suffers a present harm or loss with respect to a

03/19/2007 12:52 FAX 2024935085          AGC30                    ☑004/018
03/05/2007 Case 1:07-cv-00359-RWR    Document 6-12    Filed 03/19/2007    Page 3 of 6  ☑003
FAA Civil Rights Office

2

term, condition, or privilege of employment for which there is a remedy. Diaz v. Department of the Air Force, EEOC Request No. 05931049 (April 21, 1994).

In your complaint you explain that a four year program to "contract out" level-one Control Towers was to be finished before a new pay system was implemented, meaning all employees would transfer to new facilities under "GS" pay rules and then have conversion rules applied to place them in a position in the new pay band. However, you explain that the employees in the fourth year of the program were stopped from moving by a Federal Judge who ruled against the FAA. You further explain that fourth year employees were delayed 14 months due to the FAA's violation of law in moving to new Control Towers. You contend that during the 14 month delay, employees were kept under "GS" pay regulations since they were in a program "frozen" by a federal court.

You explain that after the 14 month delay, employees should have moved to new facilities under the "GS" rules and then have the conversion rule applied. You further explain that this would have placed their pay at the same level prior to the delay, giving employees the same treatment as employees in the first three years of the program. You contend that the FAA elected to skip the rules and placed employees pay at the bottom of the pay band in an attempt to retaliate against employees who filed a previous court action against the agency. You contend that you were also forced to resign in April 2003 to use part of your retirement fund to pay for legal action against the FAA and you have not been successful in being rehired with the FAA. You further contend an FAA official informed your representative that if you continued to complain about the pay, you would never be employed with the FAA.

In your complaint, you acknowledge that the alleged agency action was taken against all FAA employees at Level 1 control towers. The EEOC has determined that complainants cannot pursue a generalized grievance that members of one protected group are afforded benefits not offered to other protected groups, unless he/she further alleges some specific injury to him as a result of the alleged discriminatory practice. See Warth v. Seldin, 422 U.S. 490, 499 (1975); Crandall v. Department of Veterans Affairs, EEOC Request No. 05970508 (September 11, 1997) (claim that nurse practitioners in one unit received more favorable treatment than nurse practitioners in other units was a generalized grievance); Rodriguez v. Department of the Treasury, EEOC Appeal No. 01970736 (August 28, 1997) (claim that there was an imbalance in favoring of African-Americans, against Hispanics, in development and promotion opportunities was a generalized grievance purportedly shared by all Hispanic co-workers and therefore failed to state a claim). Based on the aforementioned, a determination has been made to dismiss your complaint as a generalized grievance which fails to state a claim in accordance with 29 C.F.R. § 1614.107(a)(1).

Further, as it pertains to Claim 2, you have not shown or claimed that you were not permitted to apply for a position with the agency. Generally, a claim of discriminatory nonselection fails to state a claim when complainant fails to apply for the position. See Owen v. Social Security Administration, EEOC Request No.

3

05950865 (December 11, 1997). You have not provided any information showing that you were not selected for a position or that you applied for a position with the agency to date. Also, you have not shown that you were not selected for any position 45-days or less prior to your initial EEO Counselor contact date of October 18, 2005. Furthermore, you have not shown that there were any vacancies announced for which the agency could have prevented you from applying. Based on the aforementioned Claim 2 is dismissed in accordance with 29 C.F.R. § 1614.107(a)(1).

In addition, the EEOC regulations at 29 C.F.R. § 1614.107(a)(2) require Federal agencies to dismiss a complaint or a portion of a complaint that fails to comply with the applicable time limits contained in § 1614.105, § 1614.106, and § 1614.204(c), unless the agency extends the time limits in accordance with § 1614.604(c) or that raises a matter that has not been brought to the attention of a Counselor and is not like or related to a matter that has been brought to the attention of a Counselor. The EEOC Regulation 29 C.F.R. § 1614.105(a)(1) requires that complaints of discrimination should be brought to the attention of the Equal Employment Opportunity Counselor within forty-five (45) days of the date of the matter alleged to be discriminatory or, in the case of a personnel action, within forty-five (45) days of the effective date of the action.

The Commission has adopted a "reasonable suspicion" standard (as opposed to a "supportive facts" standard) to determine when the forty-five (45) day limitation period is triggered. See Howard v. Department of the Navy, EEOC Request No. 05970852 (February 11, 1999). Thus, the time limitation is not triggered until a complainant reasonably suspects discrimination, but before all the facts that support a charge of discrimination have become apparent. EEOC Regulations provide that the agency or the Commission shall extend the time limits when the individual shows that he was not notified of the time limits and was not otherwise aware of them, that he did not know and reasonably should not have known that the discriminatory matter or personnel action occurred, that despite due diligence he was prevented by circumstances beyond his control from contacting the Counselor within the time limits, or for other reasons considered sufficient by the agency or the Commission.

In your complaint you explain that you were forced to retire in April 2003 and take legal action against the FAA for violating pay regulations. Your initial contact with an EEO counselor occurred on October 18, 2005; approximately two years after your retirement. Further, you have failed to provide sufficient justification for waiving or tolling the time limitation. Consequently, a determination has also been made to dismiss your complaint in accordance with 29 C.F.R. § 1614.107(a)(2) for untimely contact with an EEO counselor.

If you are dissatisfied with this final agency decision, you have the following appeal rights:

--  Within 30 calendar days of your receipt of this final decision, you have the right to appeal this decision to the Director, Office of Federal

03/19/2007 12:52 FAX 2024935085          AGC30                                    ☑ 006/018
03/05/2007 Case 1:04-cv-00358-RWR     Document 61-12  Rights Filed 03/19/2007     Page 5 of 6 ☑ 005

4

Operations, Equal Employment Opportunity Commission, P.O. Box 19848, Washington, DC 20036.

(EEOC Form 573, Notice of Appeal/Petition, enclosed for this purpose.)

&mdash;  Within 90 calendar days of your receipt of this action, you may file a civil suit in an appropriate U.S. District Court. The Court, at your request, may appoint and authorize legal counsel in circumstances that it deems just without the payment of fees, costs, or security. The granting or denial of the request is within the sole discretion of the Court.

You must name the person who is the official agency head or department head and his or her official title as the defendant in your appeal. In your case, you must name the following official as the defendant:

**The Honorable Norman Y. Mineta**
**Secretary of Transportation**
**400 7th Street, SW**
**Washington, DC 20590**

Failure to provide the name or official title of the agency head or department head may result in dismissal of your case. Please be advised that at the time you file any appeal or civil action, you must furnish a copy of the appeal documents to the following officials:

**Regional Director**
**Washington Regional Office, S-342**
**Department of Transportation**
**400 7th Street, S.W., Room 2104**
**Washington, DC 20590**

**Jerry Mellody**
**Assistant Chief Counsel**
**Personnel and Labor Law Staff, AGC-30**
**Office of the Chief Counsel**
**Federal Aviation Administration**
**800 Independence Ave., S.W**
**Washington, D.C. 20591**

Sincerely,

Tami L. Wright
Regional Director

Enclosure: EEOC Form 573

cc: ACR-1
w/o Enclosure

AGC-30
w/o Enclosure

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **TRACY JENSON**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Civil Action No.: 07-0359 (RWR)** |
| | ) | |
| **THE FEDERAL AVIATION** | ) | |
| **ADMINISTRATION, <u>et al.</u>,** | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## <u>ORDER</u>

This matter having come before this Court on the motion of Defendant, the Federal

Aviation Administration, for dismissal of the complaint, it is hereby

**ORDERED** that Defendant's motion is **GRANTED**.  It is further

**ORDERED** the Complaint is dismissed with prejudice against the FAA.


**SO ORDERED** this _____ day of _____, 200__.


_____
RICHARD  W. ROBERTS
United States District Court Judge